GRIFFIS, P.J.,
for the Court:
¶ 1. Guy E. Evans appeals the grant of summary judgment in favor of Joel Howell. The trial court determined that the statute of limitations for a legal-malpractice claim had expired before the complaint was filed. Evans argues that the grant of summary judgment was not proper. We find no error and affirm.
FACTS
¶ 2. Robert J. Giordano and Evans owned and operated several businesses. They formed Evans/Giordano Inc. (“EGI”) to sell insurance and related products. Giordano and Evans each owned fifty percent of the stock in EGI. Joel Howell performed legal services for EGI and advised Giordano and Evans about various corporate and other legal issues.
¶ 3. In 1996, Giordano and Evans had incorporated two other businesses: Safety Risk Services Inc. (“SRS”), and Insurance Premium Services Inc. (“IPS”). Thus, Giordano and Evans were the sole stockholders of three corporations, EGI, SRS, and IPS. EGI was a profitable entity, while SRS and IPS were new companies with little or no assets.
¶ 4. Giordano and Evans wanted to enter a buyout agreement. In the event of the death of either Giordano or Evans, this agreement would allow the surviving stockholder to purchase all stock owned by the deceased stockholder. Likewise, the estate of the deceased stockholder would be required to sell the stock to the surviving stockholder. The agreement would be funded by the purchase of life insurance policies on the stockholders. Giordano and Evans asked Howell to prepare this agreement.
¶ 5. On August 16, 1996, Giordano and Evans signed a “Purchase and Sale Agreement” (the “1996 agreement”). This agreement was prepared by Howell. It provided:
Guy E. Evans and Robert J. Giordano are sole stockholders of Evans/Giordano, Inc., a Mississippi corporation (hereinafter referred to as the Corporation, each owning fifty percent (50%) of the stock of the Corporation.
The purpose of this Agreement is twofold: (a) to provide for the purchase by the survivor of the decedent’s stock interest in the Corporation; and (b) to provide the funds necessary to carry out such purchase.
It is, therefore, mutually agreed by Guy E. Evans and Robert J. Giordano as follows:
1. If either stockholder should desire to dispose of any of his stock in the Corporation during his lifetime, he shall first offer in writing to sell his stock to the other stockholder. The offer shall be based on a price determined in accordance with the provisions of paragraph 5 hereof....
2. The parties hereto are insured by several policies, a schedule of which is attached hereto and incorporated by reference herein as Exhibit “A.” ...
3. This Agreement shall extend to and shall include all additional policies issued pursuant hereto; such additional policies shall be added to the list in Schedule “A,” attached hereto.
4. Upon the death of either stockholder, the survivor shall purchase and the estate of the decedent shall sell the stock interest now owned or hereafter acquired by the stockholder who is the first to die. The purchase price of such interest shall be computed in accordance *921 with the provisions of paragraph 5 of this Agreement.
5. The outstanding capital stock of the Corporation consists of 1,000 shares which are owned and held by the stockholders as follows:
Guy E. Evans. 500 shares
Robert J. Giordano. 500 shares
Unless and until changed as hereinafter provided, the value of each share of stock of the Corporation held by each stockholder shall be $1,500.00. Said value includes an amount mutually agreed upon as representing the goodwill of the Corporation as a going concern. Within thirty days following the end of each fiscal year, Guy E. Evans and Robert J. Giordano shall redetermine the value of each share of stock. Such value shall be endorsed on Schedule B, attached hereto....
6. Each stockholder agrees that the proceeds of the policies subject to this Agreement shall be applied toward the purchase price set forth above....
9. This Agreement may be altered, amended or terminated by a writing signed by both stockholders....
¶ 6. Although Giordano and Evans jointly owned two other companies at the time, SRS and IPS, the 1996 agreement only applied to the purchase and sale of EGI stock.
¶ 7. Between 1996 and 2004, Evans and Giordano formed two new corporations: Insurance Network Services Inc. (“INS”), and Evans/Giordano of Florida Inc. (“EGF”). Giordano and Evans operated INS, EGF, SRS, and IPS as “sister companies” of EGI.
¶ 8. By 2004, the sister companies were gaining success and bringing in significant income and profits. In September 2004, Giordano asked Howell to draft a new buyout agreement. Howell drafted a new “Purchase and Sale Agreement” (the “2004 agreement”) and provided it to Giordano and Evans. This agreement was to provide that the surviving stockholder purchase, using insurance proceeds, the deceased stockholder’s interest in all five companies for $3,000,000. The proposed 2004 agreement was never signed by Gior-dano and Evans.
¶ 9. In March 2005, Giordano and Evans asked Howell to draft another agreement (the “2005 agreement”),[1] which read in its entirety:
The parties to the buy/sell agreement of 1996 agree that, pending completion of a new agreement, the prior business valuation is hereby increased to three million dollars, with life insurance policies currently in place in that amount.
Evans and Giordano signed the 2005 agreement.
¶ 10. Giordano died on May 25, 2006. Thereafter, Evans filed a claim for the life insurance death benefits payable as a result of Giordano’s death. On August 8, EGI received two checks from Guardian Life Insurance Company of America in the amounts of $2,013,541.60 and $1,006,770.80.
¶ 11. On November 1, 2006, Giordano’s estate filed suit against Evans in the Madison County Circuit Court. Giordano’s estate claimed that the $3,000,000 from Gior-dano’s life insurance policy was for the purchase of Giordano’s EGI stock only, not Giordano’s interest in the sister companies. Evans claimed that the insurance proceeds covered not only Giordano’s interest in EGI, but also Giordano’s interest in the *922 sister companies because these companies were identified in the 2004 agreement and included in the most recent valuation. Evans settled with Giordano’s estate and paid more than the $8,000,000 that he received in life insurance proceeds for the stock in all of the corporations jointly owned by Giordano and Evans.
¶ 12. On May 18, 2009, Evans filed his complaint for legal-malpractice against Howell. Evans alleged that Howell negligently failed to prepare the 2005 agreement to cover all corporate entities formed by Giordano and Evans. Further, Evans argued that the problems arising from Howell’s negligence in drafting the “referenced documents” surfaced after the death of Giordano. He claimed Howell knew or should have known that the sister companies would be involved in the purchase and sale agreement, and he was specifically so instructed. As a result of Howell’s failure to amend the purchase and sale agreement, Evans was forced to pay money in excess of the purchased life insurance for the stock of the deceased Giordano. But for Howell’s negligence, Evans claimed, the life insurance purchased on Giordano would have covered the entire cost of Evans acquiring Giordano’s stockholder’s interest.
¶ 13. On October 4, 2012, Howell filed a motion for summary judgment. Howell claimed the statute of limitations had expired before Evans commenced this action. After a hearing, the Honorable Winston Kidd, Hinds County Circuit Judge, found the limitations period had expired and Evans’s claim was time-barred. The court entered an order granting summary judgment on November 12, 2010. Evans filed a motion for reconsideration, which was denied by order dated August 19, 2011. Evans then perfected this appeal.
STANDARD OF REVIEW
¶ 14. Appellate courts review de novo a trial court’s grant of summary judgment. Williamson ex rel. Williamson v. Keith, 786 So.2d 390, 393 (¶ 10) (Miss.2001). An appellate court examines all evidentiary matters before it “in the light most favorable to the party against whom the motion has been made.” Id. “If ... there is no genuine issue of material fact[, and] the moving party is entitled to judgment as a matter of law, summary judgment should ... be entered in his favor.” Id. “[T]he burden of demonstrating that no genuine issue of fact exists is on the moving party.” Id.
ANALYSIS
¶ 15. Pursuant to Mississippi Code Annotated section 15-1-49 (Rev.2003), a legal-malpractice claim must be brought within three years after the claim accrued. Channel v. Loyacono, 954 So.2d 415, 420 (¶ 13) (Miss.2007). When Evans’s legal-malpractice claim accrued, he had three years from that date to file his lawsuit. Evans’s complaint was originally filed on May 13, 2009. Therefore, if Evans learned or by reasonable diligence should have learned of his claim before May 13, 2006, his claim is barred by the statute of limitations.
¶ 16. Howell argues that the statute of limitations began to run when the 2005 agreement was signed, on March 10, 2005. Howell contends that the limitations period on Evans’s claim had expired before the complaint was filed. The trial court agreed and granted summary judgment.
¶ 17. Evans argues that his claim accrued, at the earliest, when the complaint was filed by Giordano’s estate against him, which was on November 1, 2006. Thus, since his claim was filed on May 13, 2009, Evans argues that his claim was timely because his complaint was filed before the *923 statute of limitations expired. Evans also argues that March 10, 2005, could not be the accrual date because he was incapable of determining Howell’s negligence before Giordano’s estate filed a lawsuit and raised the issue.
¶ 18. The issue of whether the statute of limitations has run is a question of law. Wayne Gen. Hosp. v. Hayes, 868 So.2d 997, 1000 (¶ 11) (Miss.2004). Evans does not argue that the trial court was incorrect to decide when the claim began to accrue or that this issue was a mixed question of fact and law that would be appropriate for the jury to decide.
¶ 19. The Mississippi Supreme Court has adopted the discovery rule for legal-malpractice actions. Smith v. Sneed, 638 So.2d 1252, 1258 (Miss.1994). As a result, the statute of limitations begins to run on the date that the client learns or, through the exercise of reasonable diligence, should learn of his lawyer’s negligence. Id. at 1256. Recently, the supreme court followed Sneed and reasoned:
The discovery rule is applied when the facts indicate that “it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act.” In Sneed, the Court found that the discovery rule applies when it would be impractical to require a layperson to have discovered the malpractice at the time it happened. This is because requiring a layperson to ascertain legal malpractice at the time it occurs would necessitate the retention of a second attorney to review the work of the first.
Bennett v. Hill-Boren, P.C., 52 So.3d 364, 369 (¶ 15) (Miss.2011) (internal citations omitted).
¶ 20. Both parties cite Channel v. Loyacono, 954 So.2d 415, 420 (¶ 13) (Miss.2007), as authority for the question of when a legal-malpractice claim would “accrue.” In Channel, the plaintiffs were represented by attorneys Paul Loyacono and Scott Verhine in mass tort litigation (Fen-phen). Id. at 418 (¶ 2). The engagement contract authorized Loyacono and Verhine to associate other lawyers to assist them. Id. Loyacono and Verhine began settlement discussions with the defendant in “late November and early December 2000.” Id. at (¶4). They presented settlement offers to their clients, some of whom settled and some of whom did not. Id. at 418-19 (¶¶4-5). They negotiated further and ultimately settled all of their clients’ cases. Id. at 419 (¶ 5). All of their clients received their settlement funds on January 26, 2001. Id.
¶ 21. Two of the lawyers Loyacono and Verhine associated began to call the clients and challenge the validity of the settlements. Id. at (¶¶ 6-7). In several of the cases, the associated lawyers filed a motion that “accused Loyacono and Verhine of acting dishonestly, negligently, and fraudulently in negotiating the settlements.” Id. at (¶ 7). At the hearing, “all of the clients testified that Loyacono and Verhine had acted dishonestly, negligently, and fraudulently in negotiating their settlements!;] each of them testified that they had signed their settlement agreements, received the proceeds, and considered their cases settled.” Id. at (¶8). In April 2004, the court determined that the cases were knowingly and voluntarily agreed to and were settled. Id. at (¶ 9).
¶ 22. On January 5, 2004, the clients filed a legal-malpractice action against Loyacono and Verhine. Id. at 419-20 (¶ 10). Loyacono and Verhine field a motion for summary judgment and argued that their claims were barred by the statute of limitations. Id. The trial court determined that the claims of malpractice “would have occurred in November and December 2000 when Loyacono and Ver- *924 hine negotiated and obtained settlement offers and presented them to the clients for acceptance or rejection.” Id. at 420 (¶ 11). The court found:
[TJhis Court [has] held that “the statute of limitations in a legal malpractice action properly begins to run on the date the client learns or through the exercise of reasonable diligence should learn of the negligence of his lawyer.” This Court has said that the discovery rule is to be applied when “the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question,” or it may be applied “when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act.” Given this precedent, it must be determined whether the alleged injury in this case was secretive or inherently undiscoverable, or in the alternative, whether the plaintiffs, as laymen, could not have reasonably been expected to perceive the injury at the time of the alleged wrongful act.
The “secretive or inherently undiscoverable” standard is applicable where there is some piece of physical evidence that is the subject of the test. There is no allegation in this case that there was any physical evidence that was undiscovera-ble. Therefore, we will focus on the layman standard.
Channel, 954 So.2d at 421 (¶¶ 19-20) (internal citations omitted). The court reversed the summary judgment on the ground that it could not determine when all the plaintiffs had notice of malpractice. Id. at 423 (¶ 26).
¶ 23. Here, there was nothing “secretive or inherently undiscoverable” about Howell’s preparation of and the execution of the 2005 agreement. Further, we can determine whether Evans, “as [a] laym[a]n, could not have reasonably been expected to perceive the injury at the time of the alleged wrongful act.” Id. at 421 (¶ 19). With these legal principles in mind, we examine the facts of this case. There are only three documents that are relevant. There are only two documents where Giordano and Evans actually entered a contract.
¶ 24. The 1996 and 2005 agreements were signed by Giordano and Evans. They both considered only the purchase and sale of EGI stock. The 2004 agreement was not signed, and it considered Evans’s and Giordano’s stock interests in EGI and four other corporations they had formed since 1996 (e.g., the sister companies).
¶ 25. Howell claims that Evans knew or should have known, simply by reading the 2005 agreement, that the 2005 agreement only provided for the purchase of Giordano’s EGI stock. Evans admitted that he read the 1996 and the 2005 agreements. “In Mississippi, a person is charged with knowing the contents of any document that he executes.” Russell v. Performance Toyota, Inc., 826 So.2d 719, 726 (¶ 28) (Miss.2002) (citation omitted).
¶ 26. The 2005 agreement reads:
The parties to the buy/sell agreement of 1996 agree that, pending completion of a new agreement, the prior business valuation is hereby increased to three million dollars ($3,000,000) with life insurance policies currently in place in that amount.
“The parties” were Giordano and Evans. The “buy/sell agreement of 1996” was what we have termed the 1996 agreement. The “prior business valuation” could only mean the $1,500,000 in the 1996 agreement. Evans admitted in his deposition that the business valuation under the 1996 agree *925 ment was the only business valuation that existed.
¶ 27. It is not in dispute that the 1996 agreement only required the purchase and sale of EGI stock. Even though Giordano and Evans owned stock in two additional companies, the purchase and sale of the stock of those other companies was not part of the 1996 agreement.
¶ 28. It was not unrealistic that Evans, or “an intelligent layman familiar only with the basics of English language,” understood that the one-sentence 2005 agreement covered only EGI stock because it was specifically tied to the 1996 agreement, which only covered EGI stock and did not mention any of the sister companies. Warren v. Derivaux, 996 So.2d 729, 735 (¶ 12) (Miss.2008). Evans cites Willis v. Maverick, 760 S.W.2d 642, 645 (Tex.1988), for the proposition that a “corollary to [an attorney’s] expertise is the inability of the layman to detect its misapplication; the client may not recognize the negligence of the professional when he sees it.” This principle does not assist Evans. There were only two contracts, and the contract in issue here was only one sentence and thirty-eight words long. There is nothing about the 2005 agreement that would have required Evans to retain a second attorney to review the work of Howell.
¶ 29. Other cases also provide legal principles that we must consider. In Stephens v. Equitable Life Assurance Society of the United States, 850 So.2d 78, 83 (¶ 16) (Miss.2003), the supreme court held that the statute of limitations began to run when the plaintiffs signed insurance contracts. In both Channel and Stephens, “the plaintiffs were on notice of their claims because proof of the alleged misrepresentation was apparent from the face of the contract.” Archer v. Nissan Motor Acceptance Corp., 633 F.Supp.2d 259, 268 (S.D.Miss.2007). In Archer, because the terms were apparent on the face of the documents and, with due diligence, each plaintiff could have easily determined that he or she had not been offered what had been bargained for, the discovery rule did not toll the statute of limitations there. Id. at 269.
¶ 30. The trial court determined that Evans knew or should have known of Howell’s alleged legal malpractice on March 10, 2005, when he signed the 2005 agreement. Thus, the three-year limitations period had expired before Evans’s complaint was filed on May 13, 2009. The circuit court correctly found that the action was time-barred and correctly granted Howell’s motion for summary judgment. Therefore, the summary judgment is affirmed.
¶ 31. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., ROBERTS AND MAXWELL, JJ. FAIR AND JAMES, JJ., NOT PARTICIPATING.

. Evans’s brief refers to this as the "2005 temporary agreement.” (Emphasis added).