MAXWELL, J.,
for the Court:
¶ 1. In her appeal of the grant of summary judgment in favor of Thomas Shuler and his law partnership, Grace West Jennings argues the dispositive question is whether Shuler, as a matter of law, owed her a duty to file a financing statement to perfect an interest in collateral covered by a security agreement Shuler had drafted. The circuit court had granted summary judgment in Shuler’s favor based on its finding Shuler owed no duty, and without a duty, there could be no claim for legal malpractice.
¶ 2. We disagree with the circuit court that Shuler, as a matter of law, owed no duty to file a financing statement. Instead, we find that whether Shuler breached the duty of professional care owed to *849 Jennings by not filing a financing statement is a question of fact, not resolvable on summary judgment. However, we also disagree with Jennings that this issue is dispositive and demands reversal.
¶ 3. We review the grant of summary judgment de novo.[1] And in our de novo review, we must consider each ground for summary judgment raised by Shuler.[2] Shuler had alternatively argued to the circuit court that even if Jennings’s evidence establishes a claim that he breached a duty, Jennings could not establish Shuler’s failure to file a financing statement proximately caused her injury. Shuler had also argued Jennings’s legal-malpractice claim was time-barred. After considering these alternative grounds, we find the circuit court properly dismissed Jennings’s legal-malpractice claim on summary judgment. Even if Jennings had made it past the hurdle of establishing a triable question of Shuler’s professional negligence by not filing a financing statement, she cannot show damages proximately caused by the failure to file. Further, her claim was filed outside the three-year statute of limitations. Thus, we affirm.
Background

I. Jennings Loaned More Than One-Half Million Dollars to Her Son

¶ 4. By the time Jennings retained Shu-ler to draft loan documents, she had already lent her son Luther Allen West more than $500,000, without requiring security. It was only when her other children found out about the loans — children who, along with Jennings and West, were partners in H & G Land Company, LP (H & G) — that they contacted Shuler on Jennings’s behalf.
¶ 5. At the direction of Jennings’s other son, Shuler drafted: (1) a promissory note; (2) a deed of trust on West’s real property; (3) a security agreement covering West’s nine percent interest in H & G, West’s share in the West Family Trust, and West’s interest in some farm equipment; and (4) an assignment to Jennings of West’s interest in the collateral upon default, until West paid off the debt. Specifically, the security agreement granted Jennings an interest in “[a]ll farm equipment now owned or hereafter acquired by [West], including but not limited to those items of equipment set forth on Exhibit ‘A’ attached hereto[.]” But there was no attached Exhibit A.
¶ 6. On December 31, 2002, the day Jennings and West came in to sign the documents, Shuler told them he would need West’s farm-equipment list in order to draft the exhibit and file a financing statement. Shuler promptly recorded the deed of trust in Panola County, Mississippi. But he did not file a financing statement with the Secretary of State’s Office, because he was waiting on West’s farm-equipment list. See Miss.Code Ann. § 75-9-501 (Rev.2002).
¶ 7. Instead of receiving the farm-equipment list, in April 2003 Shuler received a visit from Bill Fleming, a trust officer with First Security Bank (FSB). Fleming showed Shuler a document in which Jennings had transferred to FSB the right to receive the loan repayments West owed Jennings. The document named Fleming as custodian. And Fleming asked Shuler to hand over the original documents in connection with the Jennings-West loan.
*850 ¶ 8. The transfer-of-custody document acknowledged that the security agreement was missing Exhibit A, the list of farm equipment. Shuler told Fleming that because no farm-equipment list had ever been provided, no financing statement had been filed. Shuler encouraged Fleming to get the equipment list and file the financing statement with the Secretary of State’s Office. While West eventually gave Fleming the list in January 2004, no one told Shuler. And no financing statement was ever filed to perfect Jennings’s interest in the collateral.

II. Jennings’s Son Filed Bankruptcy

¶ 9. Despite West’s immediate default, Jennings continued to work with her son, instead of trying to seize the collateral from him, which was certainly her right under the assignment. In April 2004, she sent West a letter acknowledging his default, threatening to obtain a judgment against him, but giving her son another chance to work things out with Fleming.
¶ 10. According to Jennings, she believed this letter was sufficient notice of West’s default for the terms of the assignment to take effect, making her the outright owner of West’s nine percent interest in H & G and West’s interest in the West Family Trust. But none of the records of H & G reflected any transfer of ownership. Instead, the records showed West was still the owner of his nine percent interest and was paid distributions accordingly.
¶ 11. That is until December 2005, when the H & G partners amended their partnership agreement based on West’s filing bankruptcy — an event that under the terms of the partnership made West a limited partner, instead of a general partner. West did not in fact file bankruptcy until March 2006 — putting the change of West’s status from general to limited partner outside the ninety-day preferential-treatment period.[3] At that time, H & G stopped making distributions to West — or more precisely West’s bankruptcy estate— but instead sent West’s portion to Jennings.
¶ 12. With Shuler’s aid, Jennings filed a proof of claim, asserting her status as a secured creditor. In November 2008, the bankruptcy trustee hired an attorney to investigate Jennings’s and H & G’s financial dealings with West pre-and post-bankruptcy. And Jennings retained new counsel to replace Shuler. In 2009, the trustee initiated an adversary proceeding — a lawsuit within the bankruptcy case to determine the validity of Jennings’s secured claims.[4] In the adversary complaint, the trustee challenged Jennings’s status as a secured creditor, asserting that Jennings neither filed a financing statement to perfect her interest in West’s partnership interest in H & G nor took any steps, prior to West filing bankruptcy, to exercise any security interest she possessed in any of West’s assets. Further, H & G had continued to treat West, not Jennings, as owner of his nine percent interest. The adversary complaint also alleged that Jennings had violated the automatic stay,[5] that she was an “insider” who had received voidable loan repayments within the year of West’s filing bankruptcy,[6] and that she had failed *851 to amend her proof of claim based on these repayments.
1113. Jennings claims that it was not until November 26, 2008 — when the bankruptcy trustee applied to hire an attorney to investigate her interest — that she learned that Shuler had never filed a financing statement. Jennings ultimately settled with the trustee in 2012, receiving $15,600 more than the appraised value of West’s interest in H & G. While the bankruptcy court had rejected Jennings’s assertion that she had an absolute assignment of West’s pledged assets, the court did find her claim to West’s share in the H & G partnership was superior to the bankruptcy estate’s.

III. Jennings Sued Shuler for Legal Malpractice

¶ 14. Before the adversary proceeding had concluded, Jennings sued Shuler[7] for legal malpractice on November 22, 2011. In her complaint, she alleged Shuler had “negligently failed to execute the Uniform Commercial Code filings necessary to perfect [her] security interest in the collateral described in the Agreements with [West].” Consequently, her secured-interest status in West’s bankruptcy had been challenged in the adversary proceeding, requiring her “to engage counsel to defend her interests.” And “[i]f the Trustee prevails because Shuler failed to perfect her security interest or if the Bankruptcy Court determines there was no absolute assignment, [she] will not have the security or collateral she should have received, but for the negligence of Shuler.”
¶ 15. Shuler answered and filed a counterclaim against Jennings, H & G, FSB, Shuler’s liability insurer, and the attorney representing Jennings in the adversary proceeding, along with that attorney’s law firm and liability insurer.
¶ 16. In March 2012, Shuler filed a motion for summary judgment on Jennings’s claims. In this motion, Shuler asserted:
(1) based on the undisputed facts, Jennings could not show Shuler was negligent in failing to file the financing statement he prepared;
(2) even if Jennings could show negligent actions, Jennings could not show such negligence proximateiy caused a compensable injury; and
(3) Jennings’s legal-malpractice claim was barred by the three-year statute of limitations.
The circuit court agreed with the first reason. Because the court found that “Shuler had no duty to file the financing statement,” the court held Jennings’s evidence that Shuler did not file a financing statement could not support Jennings’s legal-malpractice claim.
¶ 17. The court granted summary judgment in Shuler’s favor, disposing of all of Jennings’s claims. The court certified its judgment as a final judgment under Mississippi Rule of Civil Procedure 54(b). And Jennings timely appealed this judgment when it became final.
Discussion
¶ 18. Jennings argues that, as a matter of law, Shuler owed her a duty to file a financing statement. And because Shuler admits he did not file a financing statement, Jennings asserts it was she, not Shuler, who was entitled to summary judg *852 ment on the issue of Shuler’s professional negligence.[8]
¶ 19. We will not go as far as Jennings asks us and declare that, as a matter of law, a lawyer who does not file a financing statement in connection with any security agreement he or she has drafted has committed malpractice. But we do think the circuit court was wrong to go the opposite route to find that an attorney never owes a duty to his client to file a financing statement. Instead, whether an attorney was professionally negligent for not filing a financing statement is a case-by-case, fact-intensive question. And while it was undisputed that Shuler did not file a financing statement, it is disputed why he never did. So the question of whether Shuler breached a duty owed to Jennings by not filing the financing statement is not one that could have been resolved on summary judgment — in either party’s favor.
¶ 20. Still, the question of whether Shu-ler breached a duty owed to Jennings by not filing the financing statement is not the only question before us on appeal. We review the grant of summary judgment de novo. Evans v. Howell, 121 So.3d 919, 922 (¶ 14) (Miss.Ct.App.2013). And in our de novo review, we must consider each ground for summary judgment raised by Shuler. See Brocato v. Miss. Publishers Corp., 503 So.2d 241, 244 (Miss.1987) (holding that, on the plaintiffs appeal of summary judgment, the defendants were “entitled to raise any alternative ground based on the pleadings in the court below which would support the judgment”). Shuler had alternatively suggested to the circuit court that even if Jennings’s evidence establishes a claim that he breached a duty, Jennings could not show Shuler’s failure to file a financing statement proximately caused her injury. Shuler had also argued Jennings’s legal-malpractice claim was time-barred.
¶ 21. After considering these alternative grounds, we find the grant of summary judgment in Shuler’s favor should be affirmed. See id. (disagreeing with circuit court that the claim was time-barred but nonetheless affirming the grant of summary judgment based on an alternative ground). We find that, even if Jennings established a triable question of Shuler’s professional negligence by not filing a financing statement, she cannot show damages proximately caused by the failure to file. Further, her claim was filed outside the three-year statute of limitations.

I. Jennings’s Failure to Establish Elements Essential to Her Claim

¶22. “Although summary judgment, in whole or in part, must be granted with great caution, it is mandated where the respondent has failed to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.” See Mabus v. St. James Episcopal Church, 13 So.3d 260, 263 (¶ 6) (Miss.2009) (emphasis added and quotations and citations omitted). As the plaintiff in a legal-malpractice suit, Jennings not only bears the burden to prove the existence of the lawyer-client relationship (which Shuler conceeds) and Shuler’s breach of duty, but she also bears the burden to prove that Shuler’s breach of duty proximately caused her injury. See Crist v. Loyacono, 65 So.3d 837, 843 (¶ 15) (Miss.2011).
*853 ¶23. Here, the circuit court’s analysis did not go beyond the element of duty. Because the judge found, based on undisputed facts, that Shuler owed Jennings no duty to file a financing statement, the court held Jennings’s claim failed as a matter of law, without delving further into Shuler’s alternative claim that Jennings failed to establish the existence of proximate cause of the injury. But in our de novo review, even if we are satisfied — as the dissent is — that a factual dispute exists over whether Shuler owed and breached a duty, we cannot end our analysis there — as the dissent does. We must also determine if Jennings has established triable issues on the remaining elements of her legal-malpractice claim.
¶ 24. Mississippi recognizes two types of legal-malpractice claims — one based on the theory the attorney breached the duty of care (i.e., was neglient), the other based on the theory the attorney breached a fiduciary duty. Id. at 842 (¶ 15). Jennings brought a negligence-based claim of legal malpractice. “Because attorneys are afforded a degree of professional autonomy, proof of success in the underlying case is an appropriate test for proximate cause in a negligence-based action[.]” Id. at 843 (¶ 16). “[I]t ensures that attorneys are only held professionally liable where their failures to adhere to the standard of care actually impacted the plaintiffs interests in the case.” Id.
¶ 25. Here, Jennings’s interest in West’s partnership interest in H & G ultimately was not impacted by the lack of a filed financing statement, as Jennings succeeded in recovering from West’s bankruptcy estate more than the appraised value of the collateral that she claims that Shuler jeopardized by his negligence. See Lawrence v. Greenline Equip., Inc., 676 So.2d 291, 292 (Miss.1996) (dismissing appeal based on intervening ruling by bankruptcy court); see also Kruger v. Garden Dist. Ass’n, 208 F.3d 1006, 2000 WL 177915, *1 (5th Cir.2000) (unpublished) (holding intervening favorable decision by state court rendered current appeal moot).
¶ 26. Jennings’s legal-malpractice claim against Shuler was conditional, alleging “if the Trustee prevails because Shuler failed to perfect her security interest or if the Bankruptcy Court determines there was no absolute assignment, [she] will not have the security or collateral she should have received, but for the negligence of Shuler.” (Emphasis added). In the opinion dismissing the bankruptcy trustee’s claim against West, the bankruptcy court found West held a valid security interest in West’s nine percent interest in H & G and that her interest was superior to the bankruptcy trustee’s. Thus, the conditional injury that Jennings asserted may have been caused by Shuler’s negligence never resulted.
¶ 27. Despite not losing the value of her collateral to West’s bankruptcy estate, Jennings asserts she was nevertheless injured by Shuler’s inaction because it led to her being sued by the bankruptcy trustee in an adversary proceeding.[9] Even if we characterize Jennings’s legal-malpractice claim as asserting a theory of breach of fiduciary duty, she still has not established a triable issue on whether it was Shuler’s failure to file a financing statement that proximately caused her claimed injury. See Crist, 65 So.3d at 843 (1116) (“[A]n attorney’s breach of his fiduciary duties to his client may cause injury to the client *854 entirely separate from the merits of the underlying case.”).
¶ 28. “The proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury, and without which the result would not have occurred.” Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, 417 (Miss.1988) (emphasis added citation omitted). If “another acting independently and of his own volition puts in motion another intervening cause which efficiently leads in unbroken sequence to the injuries,” then the intervening cause “is the proximate cause.” Hoke v. W.L. Holcomb & Assocs., Inc., 186 So.2d 474, 477 (Miss. 1966) (citation omitted). As is clear from reading the bankruptcy trustee’s complaint, it was not simply the fact that no financing statement was filed that led to the adversary proceeding. Rather, H & G’s about-face—treating West as owner of the nine percent interest and paying him dividends until he filed bankruptcy, as well as its conveniently restricting West to a limited partner more than ninety days before he filed bankruptcy—had raised a significant red flag. The trustee’s concerns were compounded by Jennings’s own ambivalence towards the repayment and secured status of her loans, which led to no equipment list being provided to Shuler, despite his saying he needed it before filing a financing statement, and kept Jennings from taking more decisive measures in the three years between West’s default and filing bankruptcy, Further, after West filed bankruptcy, Jennings failed to amend her proof of claim, despite receiving almost $70,000 towards the repayment of West’s debt.
¶ 29. While Jennings successfully settled all claims of wrongdoing by the trustee, it was her actions, not Shuler’s, that led to the adversary proceeding. The most Jennings’s evidence establishes is that Shuler’s not filing a financing statement was a remote cause of her having to defend against an adversary proceeding. See Hoke, 186 So.2d at 477. Because Jennings failed to present sufficient evidence to establish that Shuler’s not filing a financing statement proximately caused her to lose the collateral or any other injury, summary judgment in favor of Shuler was proper.

II. Jennings’s Failure to File Her Claim Within the Statute of Limitations

¶ 30. Summary judgment was also proper because Jennings’s claim was time-barred. The three-year statute of limitations applied to Jennings’s legal-malpractice claim. See Bennett v. Hil-Boren, P.C., 52 So.3d 364, 369 (¶ 13) (Miss.2011) (citations omitted). It is undisputed that in April 2003 Shuler stopped his efforts to memorialize Jennings’s loans to her son and secure collateral for those loans. But Jennings did not file her legal-malpractice claim until more than eight years later, in November 2011.
¶ 31. In her complaint, Jennings insisted her claim was timely because she did not “discover” the fact that the financing statement had not been filed with the Secretary of State until November 2008, when the bankruptcy trustee hired an outside attorney to investigate Jennings’s dealings with her son. While the “discovery rule” does apply to legal-malpractice actions, Evans, 121 So.3d at 923 (¶ 19), here we find it does not excuse her untimely claims.
¶ 32. Under the discovery rule, “the statute of limitations begins to run on the date that the client learns or, through the exercise of reasonable diligence, should learn of his lawyer’s negligence.” Id. (citing Smith v. Sneed, 638 So.2d 1252, 1256 (Miss.1994)). Here, there is no question *855 Jennings either learned or, had she exercised “reasonable diligence,” should have learned of Shuler’s alleged negligence — his failure to file a financing statement — by April 200B.
¶ 38. In the legal-malpractice context, the discovery rule applies when either “the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiseoverable nature of the wrongdoing in question” or when “it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act.” Id. at 924 (¶ 22) (quoting Channel v. Loyacono, 954 So.2d 415, 421 (¶ 19) (Miss.2007)).
¶ 34. Just as in Evans, “there was nothing ‘secretive or inherently undiseoverable’ about [Shuler’s] preparation of [the loan documents].” Id. at (¶ 23). No one disputes that Shuler told Jennings he needed a list of the equipment to complete Exhibit A to the security agreement and prepare a financing statement. So regardless of whether Shuler had a duty to file a financing statement even without an equipment list, Jennings knew Shuler was not going to file a financing statement unless she provided him with an equipment list— which she never did. Instead, in April 2003, she directed Shuler to hand over his file to Fleming at FSB, because she had designated Fleming custodian of the loan repayments from her son. The transfer-of-custody document presented to Shuler in April 2003 acknowledged there was no list of equipment attached to the security agreement. Further, Shuler did not try to conceal that he had not filed a financing statement. Instead, he encouraged Fleming to get an equipment list so that a financing statement could be filed to secure the collateral for the loan repayments. Again, regardless of whether Shu-ler’s duty to file a financing statement was non-delegable, Jennings should have known by April 2003 that Shuler had not filed — and was not going to file — a financing statement.
¶ 35. Nor was it “unrealistic to expect [Jennings,] a layman[,] to perceive the injury at the time of the wrongful act.” Id. at (¶ 22). Jennings had hired Shuler to memorialize the hundreds of thousands of dollars in loans she had already made to her son and to secure as much collateral for the loans as possible. And Shuler had told her he could not complete the task until she provided him with an equipment list. As a layman, Jennings may not have understood the importance of filing a financing statement to protect her security interest as between her and other would-be creditors. But we cannot say it was “unrealistic” for Jennings, even as a layman, to perceive that she may be injured by the fact that, according to her attorney, the loan documents he had drafted were still incomplete when she requested they be transferred in April 2003. See id. (holding it was not unrealistic for a layman client to perceive a buyout agreement only covered the stock in one company, because none of the other mutually owned companies were mentioned).
¶ 36. Because the three-year statute of limitations began to run in April 2003, Jennings’s legal-malpractice claim filed in November 2011 is time-barred. For this additional reason, we affirm the circuit court’s grant of summary judgment in Shuler’s favor. See Brocato, 503 So.2d at 244.
¶ 37. THE JUDGMENT OF THE PA-NOLA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS AND FAIR, JJ„ CONCUR. CARLTON, J., *856 DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND JAMES, J.

. Evans v. Howell, 121 So.3d 919, 922 (¶ 14) (Miss.Ct.App.2013).

. See Brocato v. Miss. Publishers Corp., 503 So.2d 241, 244 (Miss.1987) (holding that, on the plaintiff's appeal of summary judgment, the defendants were "entitled to raise any alternative ground based on the pleadings in the court below which would support the judgment”).

; See 11 U.S.C. § 547(b)(4)(A) (2010) (empowering bankruptcy trustee to avoid transfers made by insolvent debtor within ninety days of filing bankruptcy).

.See Fed. R. Bankr. P. 7001(2).

. See 11 U.S.C. § 362 (2010) (putting into effect a stay of efforts by creditors to collect pre-bankruptcy debts the moment the debtor files for federal bankruptcy protection).

. See 11 U.S.C. § 101(31) (2010) (defining "insider”); 11 U.S.C. § 547(b)(4)(B) (2010) *851 (extending avoidable transfer period to one year for payments made to insiders).

. In addition to suing Shuler as an individual, she also sued his law partnership, McClure and Shuler, which includes Shuler, James McClure Jr., and James McClure III. For simplicity, this opinion refers to the defendants collectively as “Shuler.”

. Jennings had also filed a motion for partial summary judgment on the issues of duty and breach, claiming Shuler’s professional negligence had been established by the mere fact he never filed a financing statement.

. Jennings also claims she lost the value of the farm equipment. But even if Shuler had filed a financing statement covering the equipment in December 2002, Jennings would not have had the first lien on the equipment and, consequently, could not have recovered the equipment or any portion of its value.