## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00099-COA

MICHAEL W. WOOD                                                 APPELLANT

v.

GEORGE REYNOLDS, M.D., AND TOWNSHIP                            APPELLEES
TC HEART, LLC

DATE OF JUDGMENT:            01/07/2020
TRIAL JUDGE:                HON. STEVE S. RATCLIFF III
COURT FROM WHICH APPEALED:  MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     J. M. RITCHEY
ATTORNEYS FOR APPELLEES:    GEORGE CLANTON GUNN IV
                            CAROLINE CAMPBELL LOVELESS
NATURE OF THE CASE:         CIVIL - OTHER
DISPOSITION:                REVERSED AND REMANDED - 04/13/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     Michael Wood filed a lawsuit against Dr. George Reynolds and TrustCare Clinics LLC alleging that he had been billed for a nuclear stress test that was not administered to him. Township TC Heart, LLC was substituted for TrustCare Clinics LLC as the proper defendant. Then Township TC Heart, LLC filed a motion for summary judgment, which Dr. Reynolds joined. The Madison County Circuit Court granted the motion for summary judgment. Finding that a genuine issue of material fact existed, we reverse and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

¶2. On April 18, 2019, Wood filed a complaint against Dr. Reynolds and TrustCare Clinics LLC. Wood alleged that on October 3, 2017, Dr. Reynolds performed one or more diagnostic heart tests on him. According to Wood, Dr. Reynolds called him a day or two later to discuss the results and recommended that he undergo further testing. But according to Wood, he declined and did not return to the clinic. Wood claimed that Dr. Reynolds and TrustCare Clinics LLC "intentionally fabricated [his] medical records" to show that he had submitted to further testing on October 13, 2017. Then they assigned a bill in the amount of $1,030 to a debt collector, which damaged his credit.

¶3. TrustCare Clinics LLC filed an answer and a counterclaim. According to TrustCare Clinics LLC, after Wood's initial visit on October 3, 2017, he was scheduled for additional testing, including a nuclear stress test ("Lexiscan"), and the Lexiscan and other diagnostic tests were administered to Wood on October 13, 2017. However, TrustCare Clinics LLC maintained that when Wood attempted to pay his bill, his credit card was declined.

¶4. In its answer, TrustCare Clinics LLC asserted, among other things, that Wood's claims were barred by the applicable statute of limitations. And in its counterclaim, TrustCare Clinics LLC claimed that Wood had violated the Litigation Accountability Act by asserting claims without substantial justification. According to TrustCare Clinics LLC,

> [a]fter the filing of the lawsuit, undersigned counsel provided a copy of the medical records for Mr. Wood's October 13, 2017 visit, including the results of all tests run that day, to Plaintiff's counsel. Additionally, undersigned counsel provided images from TrustCare Heart Clinic's billing records showing where Mr. Wood's card was declined on October 13, 2017. Despite this uncontroverted evidence, Plaintiff refused to dismiss this action and asserts that he did not return to TrustCare Heart Clinic on October 13, 2017.

2

Accordingly, TrustCare Clinics LLC requested attorney's fees and costs of litigation.

¶5.     Subsequently, the parties entered an agreed order to substitute Township TC Heart, LLC ("TC Heart") for TrustCare Clinics LLC as the proper defendant.  Thereafter, TC Heart filed a motion for summary judgment and requested attorney's fees and costs.  Attached to the motion for summary judgment were Exhibits A through H.

¶6.     Exhibit A contained Dr. Reynolds' notes from October 3, 2017, which indicated that Wood had a "significantly abnormal ECG" and that he would "arrange for a Lexiscan in the near future."  Exhibit A also contained an instruction form for the Lexiscan, which provided in part, "Because the medication, which will be administered during your test, must be pre-ordered specifically for you, we require a 24 hour cancellation notice.  If you do not adhere to the 24 hour policy or the above rules, there will be a $250.00 restocking charge for your medication . . . ."  The form appears to have been signed by Wood on October 3, 2017.

¶7.     Exhibit B contained Dr. Reynold's notes from October 13, 2017, which stated, "Patient comes in today for a Nuclear Scan."  Exhibit B also contained a consent form, a completed questionnaire, electrocardiogram results, and the Lexiscan results.  Exhibit G is a screenshot of TC Heart's billing system, which indicates that Wood's card was declined on October 13, 2017.

¶8.     In Exhibit D (Dana Croxale's affidavit) Nurse Croxale stated that on October 3, 2017, Dr. Reynolds ordered the Lexiscan, and it was scheduled for October 13, 2017.  She stated that she provided an instruction form to Wood with a 24-hour notice requirement for cancellation, and Wood signed the form in her presence.

3

¶9.    In Exhibit E (Jenny Bullock's affidavit) Bullock stated that she administered the Lexiscan to Wood on October 13, 2017. She stated that prior to the test, Wood signed the consent form in her presence, and then she asked him a series of questions and completed a questionnaire. She also stated that radioactive medicine was given to Wood at 8:25 a.m. and 9:50 a.m.

¶10.   In Exhibit F (Dr. Reynold's affidavit) Dr. Reynolds stated that Wood's electrocardiogram results were abnormal on October 3, 2017, so he recommended that Wood return for a Lexiscan. He stated that the Lexiscan was administered to Wood on October 13, 2017. After he reviewed the results, he called Wood and recommended that he return for a follow-up appointment in November 2017. However, Wood cancelled the appointment. In Exhibit C, Dr. Reynolds noted that Wood cancelled his follow-up appointment on November 13, 2017.

¶11.   Finally, Exhibit H contained the emails from defense counsel in which counsel provided a copy of the medical and billing records to plaintiff's counsel.

¶12.   After TC Heart filed its motion for summary judgment, Wood executed an affidavit. In the affidavit, Wood stated that he had an electrocardiogram and/or stress test on October 3, 2017. He also stated that he cancelled his appointment for a myocardial nuclear scan on October 13, 2017. He maintained that the records from October 13, 2017, were fraudulent, his signature on the consent form had been forged, and his credit card would have been accepted if he had attempted to pay for the test.

¶13.   Then in October 2019, Wood filed for an entry of default against Dr. Reynolds for

4

failure to plead, answer, or otherwise defend. After default was entered, Dr. Reynolds filed a motion to set aside the entry of default. Dr. Reynolds explained that he was initially under the impression that TC Heart's counsel would represent him, and he was not aware that he needed to hire counsel. Dr. Reynolds also filed an answer to the complaint and alleged, among other things, that Wood's claims were barred by the statute of limitations. Dr. Reynolds joined TC Heart's motion for summary judgment.

¶14. At a hearing, the court set aside the entry of default against Dr. Reynolds. With respect to the motion for summary judgment, Wood argued that there was a genuine issue of material fact. Ultimately, the court granted summary judgment in favor of the defendants and dismissed Wood's claims with prejudice. However, the court denied the defendants' request for attorney's fees and costs. Now Wood appeals.

## STANDARD OF REVIEW

¶15. The grant or denial of summary judgment is reviewed de novo. *Wright v. R.M. Smith Investments L.P.*, 210 So. 3d 555, 557 (¶6) (Miss. Ct. App. 2016). "Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id*. (quoting *Thrash v. Deutssch, Kerrigan & Stiles LLP*, 183 So. 3d 838, 841 (¶10) (Miss. 2016)). However, "the evidence must be viewed in the light most favorable to the nonmovant." *Id*.

## DISCUSSION

¶16. We must decide whether there was a genuine issue of material fact that precluded the circuit court from granting summary judgment.

5

¶17. "The party requesting summary judgment bears the burden of demonstrating that no genuine issue of material fact exists." *Bolden v. Murray*, 97 So. 3d 710, 714 (¶15) (Miss. Ct. App. 2012) (quoting *Buckel v. Chaney*, 47 So. 3d 148, 153 (¶10) (Miss. 2010)). However, "[t]he opponent to summary judgment carries a burden of rebuttal, one which arises after the moving party has satisfied the burden of proof that no genuine issue of material fact exists." *Miller v. Meyers*, 38 So. 3d 648, 651 (¶13) (Miss. Ct. App. 2010) (internal quotation mark omitted) (quoting *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 485 (¶16) (Miss. 2006)). "[A]n opponent to a motion for summary judgment 'must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial.'" *Id*. (quoting *McMichael v. Nu-Way Steel & Supply Inc.*, 563 So. 2d 1371, 1375 (Miss. 1990)). "A dispute is 'genuine' where 'the evidence is such that a reasonable jury could return a verdict for the nonmovant.'" *Brown Lakeland Props. v. Renasant Bank*, 243 So. 3d 784, 790 (¶17) (Miss. Ct. App. 2018) (quoting *Frazier v. McDonald's Rests. of Miss. Inc.*, 102 So. 3d 341, 345 (¶21) (Miss. Ct. App. 2012)).

¶18. TC Heart attached Exhibits A through H to its motion for summary judgment. However, on rebuttal, Wood executed an affidavit stating that he had an electrocardiogram and/or stress test on October 3, 2017. He also stated that he cancelled his appointment for a myocardial nuclear scan on October 13, 2017. And he stated that the records from October 13, 2017, were fraudulent, his signature on the consent form had been forged, and his credit card would have been accepted if he had attempted to pay for the test. Wood claims his affidavit created a genuine issue of material fact as to whether he was present at the clinic

6

on October 13, 2017. We agree and reverse the circuit court's grant of summary judgment.

¶19. In their brief, the Appellees claim that "some or all claims asserted in [Wood's] Complaint [were] barred by the applicable statute of limitations."[1] However, the circuit court did not rule on the applicability of the statute-of-limitations bar.[2] On remand, the circuit court may consider whether some or all of Wood's claims were barred.

¶20. The dissent in part asserts that we must reach the statute-of-limitations issue even though we cannot discern that it was ruled upon. It proffers that as an appellate court we are compelled to affirm a circuit court's grant of summary judgment if any ground will support its affirmance (citing *Horton ex rel. Estate of Erves v. City of Vicksburg*, 268 So. 3d 504, 507 (¶8) (Miss. 2018)). Both this opinion and the separate opinion agree that summary judgment should not have been granted. In the circuit court proceedings, after the motion for summary judgment was filed, a hearing was conducted on the motion. During the hearing, the allegations of the complaint were discussed along with whether the genuine facts were materially disputed. The statute-of-limitations issue upon which the dissent in part is based was not discussed at the hearing. A review of the hearing transcript gives no impression that

[1] Wood filed a motion to strike this portion of the Appellees' brief, arguing that the claim was not raised in the motion for summary judgment and was not considered by the trial court. In an order dated October 8, 2020, this Court found that the claim was asserted in Section IV of the motion for summary judgment and may be considered as an alternative ground for affirmance.

[2] The court's order stated that the motion for summary judgment was well taken and that summary judgment should be entered in favor of the defendants, without reasoning. However, the hearing on the motion concluded with the court stating that it would rule on whether there was a genuine issue of material fact. It may be inferred that the grant of summary judgment was based on the court's finding that there were no genuine issues of material fact, not the statute-of-limitations issue.

the statute-of-limitations issue was discussed or considered by the court. Rather, a reading of the hearing transcript points to the issue upon which we reverse. The two-paragraph order granting summary judgment gives no contrary indication either. Had there been some discussion of the limitation's bar or some indication in the court's order that it was implicated, I agree that we may consider such as a ground and probably should do so. But I disagree with the logic that we *must* consider and rule upon such circumstance. We have decided that summary judgment was improperly granted. At the stage of the proceedings below, there are just too many variations of facts, pleadings, and application of law, without clarification of the issues that the court below ruled upon, providing us with an insufficient record to reach around and rule. Of course, should those be more fully addressed, considered below, and ruled upon, then, if properly appealed, we should welcome the opportunity to thereupon rule. We should exercise restraint so that the circuit court may address the issues and provide us with enough upon which to decide their merit.

¶21. Finally, the Appellees requested attorney's fees and costs under Mississippi Rule of Civil Procedure 11 and the Litigation Accountability Act, Miss. Code Ann. § 11-55-1 to -15 (Rev. 2019), because Wood filed a frivolous action. The Appellees further claim that Wood's attorney "did nothing to determine whether [Wood's] claims were legitimate." However, this claim was denied by the circuit court, and the Appellees did not file a cross-appeal. Accordingly, we find that it is procedurally barred. *Tillmon v. Miss. State Dep't. of Health*, 749 So. 2d 1017, 1020 (¶14) (Miss. 1999).[3]

---

[3] Wood moved to strike this portion of the Appellees' brief as well. This Court denied the motion, holding that the remedy is to find that the improper assertion is

¶22.   To the extent that the Appellees request attorney's fees on appeal, our supreme court has recently held that a request for appellate attorney's fees must be made in a motion that complies with Mississippi Rule of Appellate Procedure 27(a).  *Latham v. Latham*, 261 So. 3d 1110, 1114-16 (¶¶21-24) (Miss. 2019).  Because the Appellees did not file such a motion, we decline to address any request for attorney's fees on appeal.

¶23.   **REVERSED AND REMANDED.**

**BARNES, C.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.  CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  WILSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION,  JOINED IN PART BY LAWRENCE, J.  EMFINGER, J., NOT PARTICIPATING.**

**WILSON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶24.   I concur that Wood's affidavit creates a genuine issue of material fact regarding whether he received the medical treatment for which he was billed.  I write separately to address the Appellees' argument that they are entitled to summary judgment based on the statute of limitations.  The Appellees properly raised this issue in the circuit court and on appeal, but the majority refuses to address it.  We are obliged to address the issue because "we *must* affirm the grant of summary judgment if any ground raised and argued below will support the lower court's decision."  *Horton ex rel. Estate of Erves v. City of Vicksburg*, 268 So. 3d 504, 507 (¶8) (Miss. 2018) (emphasis added) (brackets and quotation marks omitted).  In other words, we cannot reverse a grant of summary judgment while refusing to consider grounds for summary judgment that were raised in the court below.  Therefore, I dissent from

procedurally barred.

9

the majority opinion insofar as it refuses to address the statute of limitations. I would address that issue on the merits and hold that the Appellees also failed to establish that they are entitled to summary judgment based on the statute of limitations. Therefore, I concur that the grant of summary judgment should be reversed.

## PROCEDURAL HISTORY

¶25. In the circuit court, the Appellees moved for summary judgment on two grounds: (1) that it is "indisputable" that Wood received medical treatment on October 13, 2017, and (2) that "some or all of [Wood's] claims . . . are barred by the statute of limitations." The Appellees referred uncertainly to "some or all of [Wood's] claims" because the complaint failed to clearly identify any specific causes of action. However, the complaint expressly alleged that the Appellees were "guilty of corrupt business practices and the intentional infliction of emotional distress," so the Appellees argued that the complaint was subject to a one-year statute of limitations. *See Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 423 (¶26) (Miss. 2010) (holding that a one-year statute of limitations, Miss. Code Ann. § 15-1-35 (Rev. 2003), applies to claims for intentional infliction of emotional distress). Wood's response to the Appellees' motion failed to address the statute of limitations, but Wood's supporting affidavit asserted that his "suit . . . [was] not barred by the applicable statute of limitations" because it was "filed . . . well within one year of the date when [he] first had any knowledge that [his] cause of action had accrued." The circuit court subsequently granted summary judgment in an order that stated simply that the motion was "well-taken and that summary judgment [would] be entered in favor of the [Appellees]."

10

¶26.    In their brief on appeal, the Appellees argue that we should affirm the circuit court's judgment on the same two grounds raised in the circuit court: (1) because it is "indisputable" that Wood received medical treatment on October 13, 2017, and (2) because "some or all of [Wood's] claims . . . are barred by the statute of limitations."

¶27.    Wood filed a motion to strike the part of the Appellees' brief addressing the statute of limitations.  Wood argued that the Appellees could not raise that issue on appeal because they failed to raise the issue in their summary judgment motion and did not file a cross-appeal.  A judge of this Court denied Wood's motion, explaining:

> [Wood] is mistaken.  Section IV of [the Appellees'] motion for summary judgment . . . [argued] that Wood's complaint was untimely. . . .  The circuit court's order granting summary judgment does not specify whether summary judgment was appropriate because Wood's complaint was untimely, or whether the circuit court found no genuine issue of material fact as to whether Wood received medical treatment on October 13, 2017.  In any event, Wood reasons that the [A]ppellees may not assert their statute-of-limitations claim on appeal because they did not file a cross-appeal.  However, the Mississippi Supreme Court has held that a "cross-appeal is neither required nor expedient where its only purpose is to urge alternative grounds for affirmance." *Empire Abrasive Equip. Corp. v. Morgan*, 87 So. 3d 455, 461 (¶21) (Miss. 2012).  Consequently, Wood's request to strike that portion of the [A]ppellees' brief is not well taken.

*Wood v. Reynolds*, 2020-CA-00099-COA (Miss. Ct. App. Oct. 8, 2020) (single-judge order) (brackets omitted).

¶28.    In his brief on appeal, Wood addresses the statute of limitations issue on the merits.  He "admits" that section 15-1-35's one-year statute of limitations "is applicable to this case" but argues that he filed his claim within the limitations period.

¶29.    The majority now refuses to consider the Appellees' statute of limitations argument,

11

stating as follows: "[T]he circuit court did not rule on the applicability of the statute-of-limitations bar. On remand, the circuit court may consider whether some or all of Wood's claims were barred." *Ante* at ¶19 (footnote omitted).

## ANALYSIS

### I. We must address both grounds that the Appellees raised and argued in the circuit court.

¶30. The majority's assertion that "the circuit court did not rule on the applicability of the statute-of-limitations bar" is both unverifiable and ultimately irrelevant to this Court's role on appeal. It is unverifiable because the Appellees raised alternative grounds for summary judgment, and the circuit court simply granted the motion as "well-taken" without specifying the basis of the court's decision. Thus, for all we know, the circuit court may have granted summary judgment based solely on the statute of limitations—and may not have considered the issue that the majority addresses on appeal. There is no basis for the majority's apparent assumption that the circuit court granted summary judgment on one ground rather than the other.[4]

---

[4] It is worth noting that the majority's logic that this Court need not address the statute of limitations because "the circuit court did not rule on" it (*ante* at ¶19) could just as easily be employed to justify an entirely different opinion. On the same logic, the majority could refuse to address the evidence regarding whether Wood received treatment on October 13, 2017, because—for all we know—"the circuit did not rule on" that issue. We could just as well hazard a guess that the circuit court granted summary judgment based on the statute of limitations and then address only that issue on appeal. Or perhaps we could refuse to address both issues and send the whole case back to the circuit court because "the circuit court did not rule" on any issues specifically. As explained in the next paragraph, however, that is not the law. Rather, we cannot reverse a grant of summary judgment without at least considering all grounds for summary judgment preserved in the court below and raised on appeal.

¶31. More important, it is irrelevant whether the circuit court addressed the Appellees' statute-of-limitations argument. We review an order granting summary judgment de novo. *Keckley v. Estes Equip. Co.*, 276 So. 3d 1230, 1235 (¶14) (Miss. Ct. App. 2018), *cert. denied*, 276 So. 3d 658 (Miss. 2019). Therefore, "[o]ur review is not limited to the specific grounds on which the circuit court granted summary judgment. Rather, we review the record de novo and may consider any grounds that the moving party raised in the circuit court." *Id.* (citing *Brocato v. Miss. Publishers Corp.*, 503 So. 2d 241, 244 (Miss. 1987); *Stroud v. Progressive Gulf Ins.*, 239 So. 3d 516, 526 (¶31) (Miss. Ct. App. 2017)). Indeed, "we *must* affirm the grant of summary judgment if any ground raised and argued below will support the lower court's decision." *Horton*, 268 So. 3d at 507 (¶8) (emphasis added) (brackets and quotation marks omitted); *see also Jennings v. Shuler*, 147 So. 3d 847, 849 (¶3) (Miss. Ct. App. 2014) ("[I]n our de novo review, we must consider each ground for summary judgment raised by [the defendant-appellee].").

¶32. Because we review the issue de novo, the specific grounds on which the circuit court granted summary judgment are irrelevant to this Court's analysis. It does not matter whether the circuit court issued a long and detailed opinion or, as in this case, entered a one-page order stating only that the motion was "well-taken" and granted. Either way, we must review the record de novo, and "we must consider each ground for summary judgment raised by" the moving party in the court below. *Jennings*, 147 So. 3d at 849 (¶3). If the moving party was entitled to summary judgment, "we must affirm" even if the circuit court erred in its analysis or provided no analysis whatsoever. *Horton*, 268 So. 3d at 507 (¶8).

13

¶33. In addition to the fact that we are obligated to consider alternative grounds for affirmance, the majority's refusal to address the statute of limitations undermines judicial economy, imposes unnecessary costs on the parties, and risks an unnecessary appeal. If the circuit court believes that the Appellees are entitled to summary judgment based on the statute of limitations, then presumably the court will accept the majority's invitation to grant summary judgment again on remand. *Ante* at ¶19. Wood will appeal, and we will be right back where we are now. There is no need for that. The Appellees properly raised this issue as a ground for summary judgment, and our standard of review is de novo. We should go ahead and decide the issue. Indeed, we are bound to do so.

## II. The Appellees have not established that they are entitled to summary judgment based on the statute of limitations.

¶34. Appellees argue that section 15-1-35's one-year statute of limitations bars Wood's claim because TrustCare Clinics LLC (TrustCare) apparently assigned Wood's debt to Franklin Collection Service (Franklin) for collection on or about March 7, 2018,[5] and Wood filed suit more than a year later on April 18, 2019. However, Wood submitted an affidavit stating that he was first contacted regarding the disputed bill on or about June 1, 2018, when he received a letter from Franklin dated May 30, 2018. Wood denied that either TrustCare or Franklin ever contacted him regarding the bill prior to that time. On appeal, Wood expressly "admits" that section 15-1-35 is the applicable statute of limitations.

¶35. The "statute of limitations is an affirmative defense and, as such, the party asserting

---

[5] Based on correspondence that Wood had received from Franklin, the complaint alleged that TrustCare assigned the debt to Franklin "on or about March 7, 2018."

it has the burden of proving it." *Smith v. Sanders*, 485 So. 2d 1051, 1053 (Miss. 1986). Summary judgment may be granted based on the running of the limitations period only "if there exists no genuine issues of material fact concerning the question." *Id.*

¶36. Section 15-1-35 provides that a claim for intentional infliction of emotional distress must "be commenced within one (1) year next after the cause of such action *accrued*, and not after." Miss. Code Ann. § 15-1-35 (Rev. 2019) (emphasis added). Our Supreme Court has consistently held that "[a] cause of action accrues" for purposes of the statute of limitations "when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested." *Trigg v. Farese*, 266 So. 3d 611, 625 (¶41) (Miss. 2018) (quoting *Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 692 (¶14) (Miss. 2009) (quoting *Bullard v. Guardian Life Ins. Co. of Am.*, 941 So. 2d 812, 815 (¶11) (Miss. 2006))). "Put another way, 'the statute of limitations begins to run *when all the elements of a tort, or cause of action, are present*.'" *Id.* (emphasis added) (quoting *Weathers*, 14 So. 3d at 692 (¶14) (quoting *Caves v. Yarbrough*, 991 So. 2d 142, 147 (¶22) (Miss. 2008))). Therefore, the Appellees are not entitled to summary judgment unless undisputed facts show that "all the elements" of Wood's claim were "present" more than one year before he filed his complaint.

¶37. On the present record, there is at least a disputed issue of material fact regarding the date on which Wood's claim accrued for purposes of the statute of limitations. The tort of intentional infliction of emotional distress has five elements: (1) that the defendant "acted willfully or wantonly toward" the plaintiff; (2) that the defendant's actions "evoke outrage or revulsion in civilized society"; (3) that the defendant's actions were "directed . . . at or

15

intended to harm" the plaintiff; (4) that the plaintiff "suffered severe emotional distress as a direct result of [the defendant's] actions"; and (5) that "such resulting emotional distress was foreseeable from [the defendant's] intentional actions." *Brent v. Mathis*, 154 So. 3d 842, 850 (¶20) (Miss. 2014) (citing *J.R. ex rel. R.R. v. Malley*, 62 So. 3d 902, 906-07 (¶15) (Miss. 2011)). According to Wood's affidavit, he first learned of the disputed bill in June 2018. Accepting this statement as true, as we must for purposes of summary judgment, that obviously was the first time Wood could have "suffered severe emotional distress as a direct result of [the Appellees' alleged] actions." *Id.* Therefore, on the present record, that is also the earliest date "when all elements of [the] tort . . . [were] present" and the earliest date on which Wood's claim accrued for purposes of the statute of limitations. *Trigg*, 266 So. 3d at 625 (¶41) (quoting *Weathers*, 14 So. 3d at 692 (¶14)). Because Wood filed suit less than one year after that date, there is at least a genuine issue of material fact regarding the statute of limitations, and the Appellees are not entitled to summary judgment based on the statute of limitations. *Id.*

## CONCLUSION

¶38. I concur that there is an issue of fact regarding whether Wood received the medical treatment for which he was billed. There is also a genuine issue of material fact concerning the date on which Wood's claim accrued for purposes of the statute of limitations. Therefore, I concur that the grant of summary judgment must be reversed. I dissent from the majority opinion insofar as it refuses to consider a ground for summary judgment that the Appellees preserved in the court below and raised again on appeal.

16

**LAWRENCE, J., JOINS THIS OPINION IN PART.**