# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-IA-01595-SCT

*APRIL HORTON, AS ADMINISTRATOR AND ON
BEHALF OF THE ESTATE OF EMMANUEL
ERVES, AND WRONGFUL DEATH
BENEFICIARIES OF EMMANUEL ERVES*

*v.*

*CITY OF VICKSBURG*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2016 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY, JR. |
| TRIAL COURT ATTORNEYS: | NICHOLAS DENSON GARRARD |
| | ROBERT R. STEPHENSON, JR. |
| | NANCY DAVIS THOMAS |
| | BOBBY D. ROBINSON |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RATOYA JANAE GILMER |
| | CRYSTAL WISE MARTIN |
| | SUZANNE GRIGGINS KEYS |
| ATTORNEYS FOR APPELLEE: | JOHN MICHAEL COLEMAN |
| | KATELYN ADELE RILEY |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 05/31/2018 |
| -MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     This matter comes before the Court on Interlocutory Appeal from the Warren County

Circuit Court's entry of summary judgment in favor of the Appellee, City of Vicksburg.

April Horton–the estate administratrix for decedent Emmanuel Erves–appeals the circuit

court's decision, arguing that the court erred in finding that the City is entitled to immunity

under the Mississippi Tort Claims Act (MTCA). However, because Horton's claims against the City of Vicksburg do not support a private cause of action, we fail to reach the merits of her MTCA-immunity arguments. Finding that Horton cannot establish that the City breached any discernable duty owed to the decedent, we affirm the circuit court's decision.

**FACTS**

¶2. A ninety-eight-year-old home sits at 819 Walnut Street in Vicksburg, Mississippi. Located within the Vicksburg Historic District, this single-family dwelling was converted to a "rooming house" by Malcolm and Rose Carson in early 2000, and then sublet to various tenants throughout the last decade. One of those tenants–Emmanuel Erves–rented a room from the Carsons for several years. On February 24, 2014, Erves tumbled down the home's exterior concrete stairs and died as a result of the injuries he sustained.[1]

¶3. Estate administratrix for Erves April Horton filed a complaint in the Warren County Circuit Court alleging negligence by the Carsons and MM&R Land Investments for their failure to provide a reasonably safe premises, failure to provide adequate security, and failure to warn of a dangerous condition. Horton claimed that the condition and configuration of the stairs where Erves fell, along with the absence of a mandatory handrail, violated the city's housing code. She argued that, because of these violations, Erves was unable to regain his balance or break his fall, which ultimately resulted in fatal injuries.

---

[1] Prior to his fall, an altercation arose between Erves and another tenant. A criminal trial followed, with allegations that the other tenant pushed Erves down the stairs, causing the fall and his resulting death. The tenant was indicted for depraved-heart murder, though the jury later found him not guilty.

¶4.    One year later, Horton amended her complaint to include the City of Vicksburg and City Code Inspector Benjie Thomas as defendants in the action. Claiming that Thomas and the City breached their duty to inspect the property adequately, and that the City individually failed to provide reasonable supervision of Thomas in his duties, Horton argued that both parties should have known that the home's exterior steps were not up to code, posing an unreasonable risk of harm to the public.

¶5.    After a year of discovery and procedural delay,[2] the City filed a motion for summary judgment with the circuit court. Arguing that property-code enforcement is a discretionary function under the International Residential Code (IRC) and the International Property Maintenance Code (IPMC),[3] the City asserted its immunity under the MTCA as a defense to all of Horton's claims. The City then argued that Horton failed to state a cognizable claim under which she could support her *prima facie* case for negligence. Claiming that the City did not owe Erves a duty related to his tenancy in a private residence, Vicksburg argued that, without such a duty, no claim for negligence could be maintained.

¶6.    Following a hearing on the matter, the Warren County Circuit Court found that Horton had failed to prove that the City's inaction breached a duty and granted summary judgment in favor of the City. Citing **Brantley v. City of Horn Lake**, 152 So. 3d 1106 (Miss. 2014), the court found that the defendant's enforcement of the property code constituted a discretionary function under the MTCA, precluding Horton from recovering damages from

---

[2] Much of the delay was due to the related criminal matter and the parties' inability to depose the other tenant–the only witness to Erves's fall.

[3] The City of Vicksburg adopted the IPMC and the IRC in 2011.

the defendant. The court recognized that the application of MTCA immunity "is a question of law and, therefore, is a proper matter for summary judgment." It then determined that Horton had failed to show that the City was bound to any other ordinance or regulation requiring it to "force a property owner to install a handrail on the exterior steps of a building . . . over fifty years old and located within the City's historical district." Ultimately, the trial court determined that the City's enforcement of the code was discretionary as it applied to homes in the historical district, granting the City immunity under the MTCA.

¶7.     On appeal, Horton argues that the lower court mischaracterized this Court's holding in *Brantley* and ignored the Court's holding in *Mississippi Transportation Commission v. Adams ex rel. Adams*, 197 So. 3d 406 (Miss. 2016). She claims that the trial court's misguided reliance on this Court's standard resulted in an erroneous conclusion. It is from this claim of error that Horton appeals.

**STANDARD OF REVIEW**

¶8.     This Court conducts a *de novo* review of a trial court's application of the Mississippi Tort Claims Act as well as of that court's determination of a motion for summary judgment. *Doe v. Rankin Cty. Sch. Dist.*, 189 So. 3d 616, 619 (Miss. 2015). Summary judgment is appropriate when the record before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). When presented with such a judgment, the Court considers all the available evidence "in the light most favorable to the non-moving party." *Boroujerdi v. City of Starkville*, 158 So. 3d 1106, 1109 (Miss. 2015) (quoting M.R.C.P. 56(e)). However, that party also must

4

"set forth specific facts showing that there is a genuine issue for trial" and cannot simply "rest upon the mere allegations or denials of his pleadings." *Id.* Furthermore, "we must affirm the grant of summary judgment '[i]f any ground raised and argued below will support the lower court's decision.'" *Crider v. DeSoto Cty. Convention and Visitors Bureau*, 201 So. 3d 1063, 1070 (Miss. 2016) (citing *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1214 (Miss. 1996)).

## ANALYSIS

**Whether the circuit court erred in granting the City of Vicksburg's Motion for Summary Judgment.**

¶9. In its order granting summary judgment, the circuit court determined that the City's historic-building provision (found in IPMC Section 102.6) provides the City of Vicksburg the authority to enforce the property maintenance code in the historic district at its discretion.[4] Initially, the court agreed that the City's choice to adopt the code created a duty to inspect all private property within the city and to enforce the IPMC provisions. However, because the Section 102.6 exemption limits the only ordinance Horton identified as requiring the City's inspection and regulation of buildings located within the historic district, the court then determined that Horton had failed to prove that the City and the inspector breached any

---

[4] The provisions of this code shall not be mandatory for existing buildings or structures designated as historic buildings when such buildings or structures are judged by the *code official* to be safe and in the public interest of health, safety and welfare.

IPMC § 102.6 (emphasis in original).

ministerial duty owed to Erves as a tenant of the historic home. Finding the duties at issue to be discretionary, the court granted the City's motion.

¶10. The circuit court's order cited IPMC Sections 102.6 and 104.1,[5] interpreting their language as creating discretion for the execution of the inspector's duties and the City's protection from liability for Erves's injuries. The court referenced Section 104.1 as providing the inspector with discretion in interpreting and applying the provisions of the code. Noting this discretion, the court found that the inspector's actions aligned with Section 102.6, where he judged the "designated historic building" to be safe and in the interest of public health, safety, and welfare.

¶11. Horton argues that this ruling erroneously interprets **Brantley**, fails to apply **Adams**, and accordingly should be reversed. However, we need not address the applicability of these cases or the MTCA on appeal. While the court appropriately entered summary judgment in favor of the City, its analysis of **Brantley** and its progeny are of no moment. Critical to Horton's appeal is not whether the immunity provided for in the MTCA prevents her recovery, but whether the underlying facts of her complaint support a private cause of action against the City and its employees. As discretionary-function immunity was not the only

---

[5]    The *code official* is hereby authorized and directed to enforce the provisions of this code. The *code official* shall have the authority to render interpretations of this code and adopt policies and procedures in order to clarify the application of its provisions. Such interpretations, policies and procedures shall be in compliance with the intent and purpose of this code. Such policies and procedures shall not have the effect of waiving requirements specifically provided for in this code.

IPMC §104.1 cmt. (emphasis in original).

6

ground considered by the court under the summary-judgment motion, we may consider any contested issues of fact identified as material. *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d at 1214. To that end, we will affirm the lower court's entry of summary judgment "[i]f any ground raised and argued below will support the lower court's decision." *Id.*

¶12. Throughout the matter, Horton has maintained that when the City adopted the property code via ordinance, the IPMC became a binding directive, with no room permitted for deviation, unless expressly provided. Citing IPMC Section 102.6, Horton describes the limited instance of discretion which allows an inspector to determine whether a historic building is safe and whether any issues with the building require compliance with the code. Explaining that this section applies only to those buildings within the city which are *deemed* historic, Horton asserts that the court erroneously applied this exception to the rooming house because it has not received designation as a *historic building*. Rather, it merely sits in a *historical district.* She argues that, as a result, the house still must comply with all directives in the code, rendering the City's failure to ensure that the home was equipped with an exterior handrail a breach of its duty to the decedent.[6]

¶13. It is well-settled that "[t]he MTCA provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit." *Stewart*

---

[6] Every exterior and interior flight of stairs having more than four risers shall have a handrail on one side of the stair and every open portion of a stair, landing, balcony, porch, deck, ramp, or other walking surface which is more than 30 inches (762 mm) above the floor or grade below shall have guards.

IPMC § 307.1.

*ex rel. Womack v. City of Jackson*, 804 So. 2d 1041, 1046 (Miss. 2002) (citing *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136, 1138 (Miss 1999); Miss. Code Ann. § 11-46-7(1) (Supp. 2001)). The Act waives "the immunity of the state and its political subdivisions from claims for money damages arising out of the *torts* of such governmental entities and the *torts* of their employees while acting within the course and scope of their employment." *Taylor v. Delta Reg'l Med. Ctr.*, 186 So. 3d 384, 390 (Miss. Ct. App. 2016) (citing Miss. Code Ann. § 11-46-5 (Rev. 2012)). Though the MTCA permits negligence actions against a governmental entity, to challenge the viability of a governmental actor's immunity under the MTCA, a plaintiff must first state a valid claim upon which relief may be granted. *Id* at 391. *See also* **Tunica Cty. v. Gray**, 13 So. 3d 826, 829 (Miss. 2009)*,* holding that "a mere violation of a statute or regulation will not support a claim where no private cause of action exists." It is only after the plaintiff has established a *prima facie* case against the entity that the MTCA and its immunity provision will be addressed. *Id*. Here, we find that Horton has failed to establish such a case against the City of Vicksburg.

¶14. Horton's complaint and brief on appeal allege that the building code established the City's duty to inspect Carson's property and either condemn the home or note its handrail deficiency. Citing Sections 102.6 and 104.1 of the municipal building code, Horton asserts that the City had an obligation to ensure the private structure was equipped with a handrail on its exterior steps. She claims that, by not acknowledging the deficiency or requiring Carson to correct the code violation, the City failed to properly inspect and/or condemn the premises. Additionally, Horton claims the City both negligently supervised and negligently

employed Code Enforcer Benjie Thomas, who likewise negligently failed to acknowledge and correct the code violations.

¶15.    We disagree and find that Horton has failed to create a genuine issue of material fact as to an existing duty owed to the decedent and breached by the City.  Under Section 102.6 of the City code, Vicksburg and its officials are not required to enforce the handrail requirement under Section 307.1 on those structures "designated as historic buildings when such buildings or structures are judged by the *code official* to be safe and in the public interest of health, safety, and welfare." IPMC § 102.6.  In its motion for summary judgment and on appeal, the City explained that, following its formation of the Vicksburg Historical District, the Walnut Street residence was designated as part of the City's historical "green zone," a decision which substantiated the home's historical value.[7]  This designation is further supported by the Mississippi Department of Archives and History (MDAH).  In its

_____

[7] In his deposition, city employee Benjie Thomas referenced an ordinance from the City's Architecture Review Board and explained that, during the Historical District's creation, the City used its judgment to determine which areas of Vicksburg were historically valuable.  In doing so, the City designated the rooming house as a historical building. Located within the city's "green zone," the City recognized the historical significance of Walnut Street and its buildings, identifying the structures as being "50 years or older [that are] contributing part[s] of a district.  A contributing historical structure or building is one that contributes to a district's historic significance through location, design, setting, materials, workmanship, feeling, and association.  Furthermore, the loss of the structure would hurt the integrity of the street scape." The City argues that its decision to include 819 Walnut Street and its neighboring structures within the historical district was one made earnestly, through contemplation of the area's historical importance and its relation to the overall Vicksburg Historic District master plan. By evaluating such characteristics, the City found that the area and its structures favorably impact the historical quality of the district as a whole.

Inventory Database list,[8] the MDAH recognizes all 805 properties located within the Historical Vicksburg District–including the 819 Walnut Street home. In light of these designations, we find that the Section 102.6 exception limits the applicability of the IPMC to the buildings and structures within the historic district.

¶16. Although not binding, the commentary on Section 102.6 is instructive on this point. Therein, the section allows for the "widest flexibility in enforcing the code when the building in question has historic value." IPMC § 102.6 cmt. This flexibility is not without exception, however. "The most important criterion for application of this section is that the building must be specifically classified as being of historic significance by a qualified party or agent . . . after considerable scrutiny of the historical value of the building." *Id*. We find that the City of Vicksburg was the "qualified party or agent" that specifically classified the home and its surrounding areas to be historically significant. As a result, the City is relieved of any obligation under Section 307.1 by the exception found in Section 102.6.

¶17. Upon presenting a motion for summary judgment, the moving party is entitled to judgment as a matter of law when the court can find no genuine issue of material fact. M.R.C.P. 56(c). While the nonmoving party is given the benefit of every reasonable doubt (**Smith v. Sanders**, 485 So. 2d 1051, 1054 (Miss. 1986)), we find that Horton failed to set forth significant probative evidence or rebuttal to show that there are indeed genuine issues for trial. **Newell v. Hinton**, 556 So. 2d 1037, 1042 (Miss. 1990).

---

[8] "The Historic Resources Inventory database (HRI) is a compendium of information about Mississippi's landmarks and architecture." MDAH Historical Resources Inventory Database, https://www.apps.mdah.ms.gov/Public/search.aspx (last visited May 29, 2018).

¶18.	The dissent proposes that because Horton submitted two affidavits to the trial court in support of her response to the City's motion for summary judgment, the court's decision to render summary judgment was improper. Through these affidavits, the dissent finds that genuine issues of material fact exist as to whether the rooming house was a historic building under the relevant code provision. While the dissent correctly points out that these affidavits create a question as to whether any ordinance or regulation rendered an alleged duty ministerial, an analysis of the City's immunity under the MTCA is not needed in this matter. As an element of negligence, duty is a question of law, and whether a defendant breached its duty to the plaintiff is a question of fact. *Griffith v. Entergy Mississippi, Inc.*, 203 So. 3d 579, 585 (Miss. 2016). When a plaintiff fails to prove that a duty is owed, there can be no claim for negligence. *Id.* Neither of the affidavits presented by Horton establishes a duty owed by the City to ensure that Carson's private rooming house complied with the handrail requirement. Therefore, because Horton did not demonstrate that the City owed the decedent a duty as it related to the Walnut Street residence, she failed to present an essential element of her *prima facie* claim for negligence, making summary judgment appropriate in the matter.

**CONCLUSION**

¶19.	We find that, because Horton did not establish that the City of Vicksburg owed the decedent a duty to inspect or condemn the residence at 819 Walnut Street, and did not demonstrate that the City or its employees breached a duty under any adopted ordinance or regulation, she failed to present a genuine issue of material fact for the court's consideration. As a result, the trial court did not err in its ruling, and summary judgment was appropriate

11

in this matter. We therefore affirm the circuit court's entry of summary judgment in favor of the City of Vicksburg.

¶20.    **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶21.    Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c). The nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Id.* But this Court "must consider all of the evidence 'in the light most favorable to the non-moving party.'" ***Boroujerdi v. City of Starkville***, 158 So. 3d 1106, 1109 (Miss. 2015) (quoting ***Palmer v. Anderson Infirmary Benevolent Ass'n***, 656 So. 2d 790, 794 (Miss. 1995)). Because I find that April Horton presented ample evidence in response to the motion for summary judgment, demonstrating genuine issues of material fact, I would reverse the judgment of the Circuit Court of Warren County and remand the case to that court for trial. Accordingly, I respectfully dissent.

¶22.    The 2009 International Property Maintenance Code, adopted as the Property Maintenance Code of the City of Vicksburg (the Code), requires:

12

> Every exterior and interior flight of stairs having more than four risers shall have a handrail on one side of the stair and every open portion of a stair, landing, balcony, porch, deck, ramp or other walking surface which is more than 30 inches (762 mm) above the floor or grade below shall have *guards*. . . .

(Emphasis in original.) The Code incorporates an exception, found in Section 102.6, for buildings designated as historic buildings: "The provisions of this code shall not be mandatory for existing buildings or structures designated as historic buildings when such buildings or structures are judged by the *code official* to be safe and in the public interest of health, safety, and welfare." (Emphasis in original.) The comment to the Code says that, while the code official enjoys "the widest flexibility in enforcing the code when the building in question has historic value," the "most important criterion for application of this section is that the building must be specifically classified as being of historic significance by a qualified party or agent." According to the Code's comment, "[u]susally, this is done by a state or local authority after considerable scrutiny of the historical value of the building."

¶23.    Section 104.1 of the Code states that "[t]he *code official* is hereby authorized and directed to enforce the provisions of this code." (Emphasis in original.) The comment to Section 104.1 clarifies that "[t]he duty of the code official is to enforce the code. . . . In exercising this authority, however, the code official cannot set aside or ignore any provision of the code." Under the plain terms of the Code, the code official is duty-bound to enforce the Code. The only question currently before the Court is whether the exception from Section 102.6 applies.

¶24. The majority holds that 819 Walnut Street qualifies as an "existing building[]" or "structure[] designated as [an] historic building[]." But, under the plain terms of the Code, assuming that the majority's holding is correct, the City had no discretion with regard to the handrail requirement: "[t]he provisions of this code shall not be mandatory for existing buildings or structures designated as historic buildings *when such buildings or structures are judged by the code official to be safe and in the public interest of health, safety, and welfare.*" (Emphasis added.)

¶25. Horton attached to her response to the City's motion for summary judgment a letter from Benjie Thomas, a code enforcement officer for the City of Vicksburg, to Malcolm Carson, the owner of 819 Walnut Street, dated April 3, 2013, which mentioned "deficiencies/violations based on the International Property Maintenance Code." This letter informed Carson of his responsibility as the property owner to maintain his premises "in a sanitary and safe condition."

¶26. The letter required that Carson "[c]lean and remove all garbage, trash, rubbish and debris from entire exterior property around home[,] . . . [c]ut all grass/weeds on entire exterior property around home . . . ." Carson also was directed to maintain all shared areas of the home, to clean/sanitize the hallway, bathrooms, and kitchen, and to make necessary repairs "to plumbing or mechanical." He further was told to repair walls in hallways and repair "any cracks/holes in sheetrock on walls an[d] ceilings" and to "[r]epair weak floor in bathroom at end of hallway." Carson was instructed to cure electrical system hazards: "[r]eplace all missing or broken wall receptacle covers" and "[i]nstall blanks in breaker box."

14

The letter required also that Carson "[i]nstall smoke alarms in each rooming unit and hallway." Carson was given thirty days to correct the deficiencies and was informed that "[f]ailure to bring the property into compliance within the specified time may force this department to issue a citation for failure to comply . . . ." So it is clear that Thomas, the code official, did not in April 2013 judge 819 Walnut Street to have been "safe and in the public interest of health and welfare."

¶27.    Also attached to Horton's response to the City's motion for summary judgment was a letter from Victor Gray-Lewis, of the City of Vicksburg Department of Community Development, to Carson which was dated February 27, 2014, three days after Erves's fall, informing Carson that "[u]pon making a site inspection[] at [819 Walnut Street], the dwelling unit was found to be unsafe, lacks maintenance to a serious degree, in disrepair, unsanitary, contains filth and therefore creates a serious hazard to the health and/or safety of the occupants." Accordingly, the letter continued, "the above referenced building has been condemned and determined to be unfit for human habitation" and "[t]he occupants . . . shall have thirty (30) days to vacate the building . . . ."

¶28.    Even if 819 Walnut Street is an "existing building[]" or "structure[] designated as [an] historic building[]" within the meaning of Section 102.6 of the Code, evidence in the record demonstrates that the code officials never deemed it to have been "safe and in the public interest of health and welfare." Accordingly, the code official had no discretion with regard to requiring Carson to comply with the Code's mandate that handrails be erected.

15

¶29. Nevertheless, the majority finds that Horton failed to establish that the City of Vicksburg owed "the decedent a duty to inspect or condemn the residence at 819 Walnut Street, and did not demonstrate that the City or its employees breached a duty under any adopted ordinance or regulation . . . ." Maj. Op. ¶ 19. The majority references deposition testimony from Thomas, who explained that the City of Vicksburg had designated 819 Walnut Street to have been an historic building: "819 is color-coded green." According to Thomas:

> ["]Green: Denotes a historic building or structure over 50 years old or older that is a contributing part of a district. A contributing historic structure or building is one that contributes to a district's historic significance through location, design, setting, materials, workmanship, feeling and association. Further, the loss of the structure would hurt the integrity of the streetscape."
> That's on the historic—it is the historic area of 819.

Thomas continues that the language he had quoted was "something from the Architectural Historical Review Board, and I believe it to be an ordinance. Section 814."[9] Thomas declined to issue a citation to Malcolm Carson, the owner of 819 Walnut Street, because the City of Vicksburg had deemed the district historic. The majority finds that 819 Walnut Street is an historic building because Thomas opined that it was situated in the "green zone." The majority further finds that the City of Vicksburg was a "qualified party or agent" entitled to designate historic buildings.

¶30. The majority also references a listing of 819 Walnut Street in a document prepared by the Mississippi Department of Archives and History entitled "Properties in Historic

---

[9] It is of note that the City of Vicksburg and the other defendants did not make this document, whatever it may be, a part of the appellate record.

16

Vicksburg District Historic District." According to the majority, "Horton failed to set forth significant probative evidence or rebuttal to show that there are indeed genuine issues for trial," specifically with regard to the duty element of negligence. Maj. Op. ¶ 17.

¶31.    But Horton did respond to the City's motion for summary judgment. She attached an affidavit from Johnnie Daniels, owner and operator of Metro Home Inspection, LLC, a construction manager and property inspector who formerly had worked for the City of Jackson as a building inspector, senior building inspector, and manager of inspection. Daniels opined that the Department of Archives and History listing "established that the home is located in a historical district," but that "the home itself is not deemed a historical home and Malcolm Carson is still required to maintain 819 Walnut Street in compliance with the 2009 International Property Maintenance Code." According to Daniels, the City of Vicksburg "had a duty to enforce the International Property Maintenance Code with respect to 819 Walnut Street" and "breached its duty to enforce the code at 819 Walnut Street . . . ." Daniels opined that "the house was cited on several occasions prior to this incident" and that "[w]hen the code official conducted these site inspections, the home should have been cited for all the deficiencies [that] includes the lack of a handrail, landing and the condition of the steps."

¶32.    Also attached to Horton's response to the City's motion for summary judgment was an affidavit from Cynthia M. Rando, a Certified Human Factors Professional, who opined, as an expert, that [i]f there had been handrails installed on either side of the staircase it is more likely than not that Mr. Emmanuel Erves would have been able to circumvent his fall

and reduce the severity of his injuries and prevent death." According to Rando, "code enforcers failed to require the property owner to abide by the International Property Maintenance Code." She continued: "Failing to have properly configured steps, failing to have handrails and failing to enforce the Code robbed Mr. Erves of the opportunity to break his fall and avoid serious injury and death."

¶33. The affidavits attached to Horton's response render summary judgment improper. Horton's response to the City's motion for summary judgment, contrary to the majority's finding, does demonstrate the existence of genuine issues of material fact with regard to whether 819 Walnut Street was an "existing building[] or structure[] designated as [an] historic building[]." The majority is correct that the ultimate determination of the existence *vel non* of a duty is a question of law. *See Enterprise Leasing Co.-SouthCent., Inc. v. Bardin*, 8 So. 3d 866, 871 (Miss. 2009) ("The allegation of a duty cannot suffice as a genuine issue of material fact in order to survive a summary judgment motion."). But in this unique case, specific fact questions underlie the determination of whether a duty exists. And the trial court, in analyzing this case under *Brantley v. City of Horn Lake*, 152 So. 3d 1106 (Miss. 2014), was faced not with the question of whether a duty of care was owed, but rather whether any ordinance or regulation rendered the duty ministerial.

¶34. The circuit court erred in holding that the City of Vicksburg was, as a matter of law, entitled to discretionary function immunity:

> The plaintiff has not pointed this Court to any city ordinance or other regulation that requires the City to force a property owner to install a handrail on the exterior steps of a building that is over fifty years old and located within

18

the City's historic district, thereby rendering the act or failure to act ministerial.

The circuit court failed to take into account Daniels's affidavit. Mississippi Code Section 21-19-25 states that "[a]ny municipality within the State of Mississippi may, in the discretion of its governing authority, adopt building codes . . . ." Miss. Code Ann. § 21-19-25 (Rev. 2015). The parties agree that Section 21-19-25 encompasses the "broad governmental function" referenced in *Brantley*, 152 So. 3d at 1113. But the parties dispute the existence of a "narrower duty that may have formed the basis of the claim against the governmental entity," which we must consider "to determine whether that particular duty has been rendered discretionary or ministerial by statute or regulation." *Id.* Daniels's affidavit established, or at least contradicted, Thomas's deposition testimony that 819 Walnut Street was not an historic building and that, as such, the City had no discretion with regard to requiring Carson to make his property Code-compliant.

¶35. Accordingly, I would reverse the trial court's grant of summary judgment and remand the case for a trial on the merits.

**KING, J., JOINS THIS OPINION.**