# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01325-COA

**KENNETH BAILEY AND ELIZABETH LEE**      **APPELLANTS**
**SHUTZE, AS WRONGFUL DEATH**
**BENEFICIARIES OF BERTHA ELIZABETH**
**BAILEY, DECEASED**

**v.**

**CITY OF PEARL, MISSISSIPPI**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/12/2018 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | STACY EVERETT PEPPER |
| | STEVEN CRAIG PANTER |
| ATTORNEYS FOR APPELLEE: | WALKER REECE GIBSON |
| | REBECCA SUZANNE BLUNDEN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART |
| | AND REMANDED - 07/30/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McDONALD AND C. WILSON, JJ.

### McDONALD, J., FOR THE COURT:

¶1. The Rankin County Circuit Court granted the City of Pearl's (Pearl) motion to dismiss a wrongful death case brought under the Mississippi Tort Claims Act (MTCA) by Kenneth Bailey (Bailey) and the heirs of his wife, Bertha Bailey, deceased. After review of the record and relevant case law, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

¶2. On September 18, 2017, Bailey and his wife, Bertha, went to their grandson's baseball

game at the Pearl youth ballpark.[1]  A gate to the park on Legion Lake Road was open when they arrived.  Allegedly while the Baileys watched their grandson play, the gate was left unsecured and unattended, which allowed it to swing partially closed.  Later, when the Baileys left, the gate was swung open in a northerly direction facing the Bailey's oncoming vehicle. Bailey alleged that this created a substantial, unavoidable, hazardous condition. Bailey was driving, and Bertha was in the passenger seat.  The Baileys' vehicle collided with the gate in such a manner that the gate "speared" the cab of the vehicle, striking Bertha in the head.  She was taken to the hospital but died eleven days later.

¶3.     In his complaint, Bailey cited numerous duties that he alleged Pearl owed to visitors to its park, including to properly design and install the gate; properly maintain the gate; have proper equipment in place to secure the gate; properly supervise, hire, and train its employees; establish safety protocols for the safe use of the facility by the public; provide adequate lighting in the area for the public; mark and warn of any dangerous conditions; inspect fixtures upon the property that could create a dangerous condition; provide and allow safe ingress and egress onto the city's property; and refrain from blocking the road with anything that could cause injury.  These were in addition to the claim that the gate was left unsecured.  Bailey alleged Pearl breached these duties and caused his wife's death.

¶4.     After being served with the complaint and summons, Pearl filed an answer and a motion to dismiss based on discretionary-function sovereign immunity.  Although Bailey propounded written discovery during briefing, no responses were provided before the motion

---

[1] Because the case was decided on a motion to dismiss, the facts are limited to those contained in the complaint.

2

hearing was held and the order on the motion to dismiss was rendered.[2]

¶5.    The circuit court adopted and incorporated the argument in Pearl's reply and granted the motion to dismiss on September 12, 2018. Applying *City of Jackson v. Doe*, 68 So. 3d 1285 (Miss. 2011), the court found that the operation and maintenance of a park is a discretionary function, and therefore, Pearl is immune from liability under the MCTA. From that order, Bailey appeals.

## STANDARD OF REVIEW

¶6.    An appellate court reviews de novo the grant or denial of a motion to dismiss. *King v. Bunton*, 43 So. 3d 361, 363 (¶10) (Miss. 2010); *Doe v. Holmes Cty. Sch. Dist.*, 246 So. 3d 920, 922 (¶6) (Miss. Ct. App. 2018). "The allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Id.*

## DISCUSSION

¶7.    Because the viability of Bailey's claims turns on the application of discretionary-function immunity to the alleged actions and inactions of Pearl, and because the precedent governing that question has evolved even during the pendency of this case, it is necessary to survey recent guidance from the supreme court as to the proper test with which to filter Bailey's claims. In applying that precedent, it is apparent that several of Bailey's claims are based on Pearl's policy considerations (e.g., decisions about design and installation of the gate at issue; supervision, hiring and training of city employees; lighting and safety

---

[2] The circuit court heard argument on the motion, but no transcript was made.

3

protocols) and were correctly dismissed by the circuit court. But Bailey's alleged claim that "the gate was negligently left unsecured and unattended thereby . . . creating a substantial, unavoidable, hazardous condition," at least as pled in Bailey's complaint, plausibly sets forth a simple act of negligence that would fall outside discretionary-function immunity shielding Pearl from liability. The allegations of a breach of Pearl's duty "to properly maintain the gate" and "to inspect fixtures on the property that would create a dangerous condition" would do so as well. Accordingly, as to those allegations, the circuit court erred in dismissing Bailey's simple negligence claims at the pleading stage. We address these points in turn.

¶8. The MTCA, Mississippi Code Annotated section 11-46-1, et seq. (Rev. 2012), waives sovereign immunity and allows public entities to be sued for certain torts of governmental entities and their employees after receipt of proper notice. But Mississippi Code Annotated section 11-46-9(1) (Rev. 2012) identifies twenty-five types of claims for which a public entity shall not be liable (i.e., for which it remains immune from suit), including claims:

> (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused . . . .

Miss. Code Ann. § 11-46-9(1)(d).

¶9. For years, courts have grappled with the difference between a "discretionary" function, which provides immunity, and a "ministerial" function, which does not. The Supreme Court's latest definitive discussion of discretionary-function immunity appears in *Wilcher v. Lincoln County Board of Supervisors*, 243 So. 3d 177 (Miss. 2018). There, a driver was injured when his vehicle crashed into a large hole left in the road overnight during

4

bridge construction. *Id.* at 181 (¶5). In reversing a grant of summary judgment based on discretionary-function immunity, the Court explained the difficulty of applying what appears to be a clear concept (i.e., discretionary immunity) and how the Court has turned for guidance to the body of law developed under the Federal Tort Claims Act. *Id*. at 182 (¶11). Citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991), *Wilcher* pointed out that "the purpose of the exemption is to prevent judicial second-guessing of legislative and administrative decisions grounded in" public policy. *Wilcher*, 243 So. 3d at 182 (¶11) (quoting *Gaubert*, 499 U.S. at 323). Only functions which by their very nature are policy decisions are protected. *Id.* at (¶12). *Gaubert* developed the "public-policy function test" that *Wilcher* re-adopted. *Wilcher*, at 187 (¶30). The public-policy function test has two parts:

> This Court first must ascertain whether the activity in question involved an element of choice or judgment. *Miss. Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 795 (Miss. 2012). If so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations. *Id*. Only when both parts of the test were met did a government defendant enjoy discretionary-function immunity.

*Wilcher*, 243 So. 3d at 182 (¶12).

¶10. The supreme court had previously mandated the use of the public-policy function test in *Jones v. Mississippi Department of Transportation*, 744 So. 2d 256, 260 (Miss. 1999), and it was applied in numerous cases until 2014. Then in *Brantley v. City of Horn Lake*, 152 So. 3d 1106 (Miss. 2014), the Court formulated a different two-step analysis of a public entity's actions, namely to look at the overarching function that led to the action and determine whether it was discretionary or ministerial, and then examine any narrower duty associated with the activity at issue to determine if any statute or regulation renders that duty ministerial.

5

*Id.* at 1112 (¶17). *Wilcher* overruled *Brantley*, noting how tedious and scattered the *Brantley* analysis had become, stating that the *Brantley* test

> "overcomplicates the process of litigating a claim and places the success of a claim on the ability of the injured party's attorney to sift through myriad and sometimes arcane regulations—creating extra layers of proof, which may have little or no practical effect on the actual negligent act." *Crum v. City of Corinth*, 183 So. 3d 847, 854 (Miss. 2016) (Randolph, P.J., concurring in result only).

*Wilcher*, 243 So. 3d at 183 (¶15).

¶11.    More importantly, the *Wilcher* Court said that the purpose of the MTCA exemption is to shield the public entity, *id.* at 184 (¶17), not make it susceptible to suits for violations of statutes or local codes or ordinances as was attempted in *Horton v. City of Vicksburg*, 268 So. 3d 504 (Miss. 2018) (finding that MCTA immunity barred a claim based on the city's alleged failure to inspect under its housing code). The *Wilcher* Court was adamant that violations of statutes and regulations per se do not create causes of action that can be brought against public entities. *Wilcher*, 243 So. 3d at 184 (¶18).

¶12.    But *Wilcher* clearly provided that public entities are still subject to basic negligence claims, saying:

> Wilcher's complaint is evidence of the confusion *Brantley* has created. According to his factual allegations, the County and City removed a bridge and failed to warn oncoming motorists the road had not yet been replaced. These allegations support a common-law premises-based claim of failure to warn of a dangerous condition created by the County and City. Yet, Wilcher did not plead his claim as negligent failure to warn. Instead, Wilcher apparently found the statutory duty that most closely fit the factual scenario. And he argued the County and City breached the ministerial duties the statute imposed. He then turned to the state manual. He did this to establish a claim that, should the broader statutory function be discretionary, the defendants still had violated mandatory regulatory duties. In other words, even though Wilcher's

6

allegations support an obvious common-law negligence claim against the defendants, under *Brantley*, he was forced to present his claim as a statutory and/or regulatory violation.

*Id.* at 185 (¶22). The Court then stated that "rather than try to dig our way out by further modifying the *Brantley* test, we find the better course is to put down the shovel. We thus abandon and overrule the *Brantley* line of cases and return to our original course of applying the widely-recognized, easily understood, public-policy function test." *Id.* at (¶23).

¶13. At issue in this case is whether *Wilcher*'s return to the public-policy function test automatically reinstates all pre-*Brantley* precedents. We find that it does not because *Wilcher* specifically said some pre-*Brantley* cases had misapplied the test and "stretched the bounds of 'policy' beyond credulity," citing as an example *Pratt v. Gulfport-Biloxi Regional Airport Authority*, 97 So. 3d 68 (Miss. 2012). *Wilcher*, 243 So. 3d at 188 (¶33). Thus, any pre-*Brantley* precedent must be closely examined prior to application. In *Pratt*, the Court had held the act of placing anti-skid tape on airport steps was discretionary because the operation of an airport was a discretionary function. *Id*. at 75 (¶18). Finding this result extreme, the *Wilcher* Court reversed the *Pratt* decision and specifically adopted Justice Waller's dissent in *Pratt*. *Wilcher*, 243 So. 3d at 188 (¶33). Because the *Pratt* dissent is instructive in this case, we cite it in full:

> Because I would hold that the actions at issue in this case—maintaining passenger airstairs—do not enjoy discretionary-function immunity, I respectfully dissent.
>
> I agree with the plurality that the decision to operate an airport is an immune discretionary function. See Plur. Op. ¶10 ("A decision . . . to operate an airport is discretionary."). However, the act at issue does not encompass a policy decision or act properly the subject of governmental immunity. Pratt does not

7

claim to have been injured by the decision to operate the Gulfport–Biloxi Regional Airport. In fact, neither party argues that the decision to operate the airport is the act at issue. Rather, it is the alleged negligent placement of anti-slip tape on the airstairs on which Pratt slipped that he claims caused his injuries.

In applying the discretionary-function exception, "'this Court must distinguish between real policy decisions implicating governmental functions and simple acts of negligence which injure innocent citizens.'" *Dancy v. E. Miss. State Hosp.*, 944 So. 2d 10, 17-18 (Miss. 2006) (quoting *Gale v. Thomas*, 759 So. 2d 1150, 1162 (Miss. 1999)). The exception "protects only governmental actions and decisions based on considerations of public policy." *Berkovitz v. U.S.*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L. Ed. 2d 531 (1988). When reviewing whether a challenged action is afforded immunity, a court's focus is "on the nature of the actions taken and whether they are susceptible to policy analysis." *U.S. v. Gaubert*, 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed. 2d 335 (1991).

As the Court of Appeals recognized, no "policy" was involved in the placing of the anti-slip tape:

> During the deposition of Lloyd Gates, the maintenance man who actually put the anti-slip tape down on the stairwell, Gates was asked why he and another employee identified as "Richard" only put a small strip of anti-slip tape on two feet of the center portion of the stair surface, as opposed to the entire four-foot stair surface. Gates answered, "I think it was probably both of us saying that one *would probably be enough*." *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 80, 84-85 (Miss. Ct. App. 2011) (emphasis in original).

The Court of Appeals noted that there was an adequate supply of tape to cover the entire surface. *Id.* I agree, then, with the Court of Appeals that the manner in which the maintenance personnel placed the anti-slip tape did not implicate social, economic, or political policy, but was simply "a completely random decision." *Id.*

Today's case is distinguishable from those cited by the plurality. This is not a case in which a person was injured by a third party while merely present on government-owned property. *Cf. City of Jackson v. Doe*, 68 So. 3d 1285 (Miss. 2011). And, unlike the plaintiff in *Shaw*, Pratt does not claim that the airport is exempt from immunity because it constitutes a "commercial

8

enterprise." *Miss. Dep't. of Mental Health and Ellisville State School v. Shaw*, 45 So. 3d 656, 660 (Miss. 2010). Rather, Pratt's claim is based on the airport's alleged failure to provide a safe means of exiting an airplane—a simple act of negligence. *See Darcy*, 944 So. 2d at 17-18.

The United States Supreme Court has made it clear that maintenance decisions such as the one at issue today do not involve policy considerations. In *Indian Towing Co. v. U.S.*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), the Court held that the U.S. government was liable for damages resulting from the Coast Guard's failure to inspect electrical equipment adequately. The Court recognized that the Coast Guard was not required to operate the lighthouse. *Id*. at 126. And it is obvious that the decision to operate a lighthouse—to guide those at sea safely to shore—involves policy considerations. However, the Court held that "once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order." *Id*. at 126-27. Commenting on *Indian Towing* in his concurrence in *Gaubert*, Justice Scalia said that maintenance decisions such as this—and the one at issue in today's case—did not involve policy considerations. *Gaubert*, 499 U.S. at 336 (Scalia, J., concurring in part and in judgment); *see also Berkovitz*, 486 U.S. at 538 n.3 (noting that the failure to maintain the lighthouse in good condition "did not involve any permissible exercise of policy judgment").

The action complained of by Pratt does not implicate social, economic, or political policy. As such, I would hold that it does not enjoy discretionary-function immunity.

For the above reasons, I respectfully dissent.

*Pratt*, 97 So. 3d at 76-77 (¶¶21-28) (Waller, C.J., dissenting). By adopting Chief Justice Waller's dissent in *Pratt*, the *Wilcher* Court incorporated it into our body of binding precedent. Moreover, by its adoption, the *Wilcher* Court was indicating that some precedents, such as *City of Jackson v. Doe*, 68 So. 3d 1285 (Miss. 2011), are limited in scope and that basic maintenance decisions do not involve policy considerations and are thus not discretionary. *See Wilcher*, 243 So. 3d at 188 (¶¶33-35).

9

¶14.    That negligent maintenance is a separate actionable claim against a public entity and not subject to discretionary-function analysis is noted in the post-*Wilcher* case of *Estate of Hudson v. Yazoo City*, 246 So. 3d 872 (Miss. 2018). That case, which involved the drowning death of a child in a city drainage ditch, was filed while *Brantley* was in effect. Thus, to meet the *Brantley* requirements, the Estate claimed that while the overarching function of creating drainage ditches may be discretionary, the rules of the National Flood Insurance Program to obtain a flood plain development permit were mandatory and violated by the city. *Id.* at 875 (¶18). The circuit court applied *Brantley* and held that the city was immune from suit because the ordinances and regulations did not make the city's construction of ditches a non-discretionary, ministerial function. *Id.* at 876 (¶27). On appeal, the supreme court reviewed the *Brantley* arguments that the parties made, but noted that while *Hudson* was pending, the court decided *Wilcher* and overruled *Brantley*. *Id.* at 873 (¶5). The supreme court held that the Estate had no private cause of action against the city under any of the statutes or ordinances cited. It remanded the case for re-examination of the discretionary-function defense in light of the holding in *Wilcher*. *Id.* at 880 (¶51). The *Hudson* Court also noted that the Estate had alleged that the city had failed to properly maintain the ditch and thus created a dangerous condition, which is a simple negligent- maintenance action. Apparently the Estate had backed away from that claim perhaps because of the *Brantley* analysis requirements. *Id.* at (¶49). Therefore, the Court made no decision on the matter, saying:

> Given that the Estate's case was still pending when *Wilcher* handed down, overruling the *Brantley* test and reinstituting the public-policy function test for purposes of Section 11-46-9(1)(d), the applicability of subsection (d) must be decided under the reinstituted public-policy function test. And out of fairness

10

> to the Estate, we find the Estate should be allowed the opportunity to fully present its negligence claim, beyond its reliance on the overruled *Brantley* test.
>
> Furthermore, following careful de novo review of this record, we continue to have questions with regard to the applicability of both subsections (d) and (v) to the current facts in this case. And in fairness to both parties, we decline to enter into a discussion with regard to either exemption under the record in this case.

*Hudson*, 246 So. 3d at 880 (¶¶51-52).

¶15. Noticeably, the *Hudson* Court did not automatically apply the pre-*Brantley* case of *Fisher v. Lauderdale County Board of Supervisors*, 7 So. 3d 968 (Miss. Ct. App. 2009), which held that the installation and maintenance of drainage ditches was a discretionary function. Instead the Court remanded the case for reconsideration under *Wilcher* and pursuit of the simple-negligence claim. Likewise, in this case, we do not find *City of Jackson v. Doe*, 68 So. 3d 1285 (Miss. 2011), dispositive of this case for several reasons. As the Court stated in the *Pratt* dissent and *Wilcher*, *Doe*, on July 30, 2019, involved an injury committed by a third person on government property. *Pratt*, 97 So. 3d at 77 (¶25) (Waller, C.J., dissenting). The facts here do not involve an injury caused by a third party's actions. Moreover, in *Doe*, the activity the Court examined was the operation of a park, *Doe*, 68 So. 3d at 1288 (¶12), just as the *Pratt* majority had examined the operation of an airport. *Pratt*, 97 So. 3d at 73-74 (¶14). The focus on the general function as the "activity" was in error as the *Pratt* dissent clearly articulated. Here the activity in question is not the city's policy decision to create a park, rather the activity was an alleged failure to secure or maintain a gate in that park. The activity being different, *Doe* does not preclude Bailey's claim.

¶16. Applying the *Wilcher* analysis here, we begin with the identification of the activity

11

being challenged.[3]  We must distinguish between *real policy decisions* implicating governmental functions and *simple acts of negligence* that injure citizens.  *Wilcher*, 243 So. 3d at 188 (¶34).  "[W]hen reviewing whether a challenged action is afforded immunity, a court's focus is 'on the nature of the actions taken and whether they are susceptible to policy analysis.'"  *Id.* (quoting *Gaubert*, 499 U.S. at 325).

¶17.    Bailey has pled numerous actions/failures by Pearl with respect to the ballfield in question.  Pearl argues that we need not address each activity pled by Bailey because proving one subsection of section 11-46-1 gives it immunity for all claims.  But this is not the law.  In *MacDonald v. Mississippi Department of Transportation*, 955 So. 2d 355, 361 (¶25) (Miss. Ct. App. 2006), this Court held:

> It is true that, for any individual claim, where any one provision under section 11-46-9(1) grants immunity, a governmental entity is immune to that individual claim.  However, where there are separate claims, that single provision may or may not be sufficient to create immunity as it applies to those other claims.  Resolution of the question as to whether a single finding of immunity equates to immunity as to each and every claim raised depends on the facts of the case and the relevant claims.

The supreme court subsequently said:

> To be clear, we have never held that the applicability of one exemption extinguishes all claims.  Each separate and distinct claim must meet an exemption under one of the subsections of Section 11-46-9(1) for immunity to apply to that particular claim.

*Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 139 (¶15) (Miss. 2013).  Therefore, we

---

[3] In *Wilcher*, the plaintiff was not complaining about the placement of a traffic device, which would be a governmental discretionary function.  Rather Wilcher was complaining of the tortious act of the crew's failure to barricade the hole they had dug in the road or warn drivers about it.  *Wilcher*, 243 So. 3d at 188 (¶¶32-33).  This failure, the Court held, was not the result of a policy decision.  *Id.*

12

address each of the claims pled by Bailey.

¶18.   We note that Mississippi Code Annotated section 55-9-29 (Rev. 2014) authorizes Pearl to create a park "to promote the public interest and welfare in the participation in . . . athletics and recreational activity . . ." and authorizes the construction of "buildings, facilities and improvements incident thereto . . . ."  Keeping this in mind, we find that several of the activities that Bailey listed in his complaint do involve public policy judgment-making by Pearl.  Any decision made related to the design and construction of the park would involve public-policy considerations, including the provision of safe ingress and egress to the park; the selection of the design and installation of the gate; obtaining the proper equipment to secure the gate; and the provision of adequate lighting in the area per the design selected. Therefore, the circuit court was correct in finding Pearl immune from these claims.

¶19.   Moreover, matters dealing with personnel, including the hiring, supervision and training of employees were determined to be discretionary functions in the post-*Wilcher* case of *City of Clinton v. Tornes*, 252 So. 3d 34, 40 (¶23) (Miss. 2018) (finding that the city was entitled to discretionary-function immunity on motorist's claims that city acted negligently in training its police officer).  Therefore, the circuit court was also correct in dismissing the negligent-hiring, training, and supervision claims pled by the Baileys.  The adoption of safety protocols for the safe use of the facility by the public is also discretionary because it is an exercise of the city's rule-making authority that *Wilcher* says should not be invaded.  So the circuit court was correct in dismissing that claim.

¶20.   Other activities listed by Bailey deal with park maintenance:  negligently leaving the gate unsecured; failing to maintain the gate; and failing to inspect fixtures upon the property

13

that could create a dangerous condition. Pearl argues that these claims are barred, citing two pre-*Wilcher* cases that hold maintenance to be a discretionary function.[4] But *Wilcher*'s adoption of the *Pratt* dissent overrules those maintenance cases. Moreover, although it is true that a plaintiff must allege specific acts of negligence not related to or flowing from a social, economic, or political policy, merely saying that maintenance costs money does not make the failure to provide it an "economic policy" decision.

¶21. At oral argument Bailey said that the key activity in this case was the failure to secure the gate or have an apparatus that would secure the gate. These are basic negligence claims as identified in *Wilcher* and the *Pratt* dissent. Moreover, the allegation that the city failed to mark and warn of a dangerous condition (i.e., an unsecured gate) may be actionable and not barred by section 11-49-9(w) if Bailey can prove that Pearl had prior notice of the condition. We find no discretionary-function immunity afforded to Pearl on these claims.

¶22. Because Bailey may be able to prove a set of facts under the MTCA for actions by Pearl that are not exempt from immunity, we hold that the circuit court erred in dismissing the claims of basic negligence cited above, and we remand the case for further proceedings.

**CONCLUSION**

¶23. Because Bailey's allegations concerning the design of the city's ballpark, including lighting, gates, and safe ingress and egress to the park, as well as the proper hiring, training, and supervision of employees and the adoption of safety protocols for use of the park by the

---

[4] *Fisher v. Lauderdale Cty. Bd. of Supervisors*, 7 So. 3d 968 (Miss. Ct. App. 2009) (finding maintenance of culverts to be a discretionary function); *Fortenberry v. City of Jackson*, 71 So. 3d 1196 (Miss. 2011) (finding maintenance of sewer system to be a discretionary function).

public are discretionary functions, we affirm the circuit court's dismissal of these claims pled by Bailey. But because Bailey's allegations of negligently leaving the gate unsecured, failing to maintain the gate, and failing to inspect fixtures upon the property that could create a dangerous condition are not exempt under the public-policy function test of discretionary immunity, we reverse the circuit court's dismissal of those claims and remand for further proceedings.

¶24. **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McCARTY AND C. WILSON, JJ. CONCUR. LAWRENCE, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**